Elaine S. ALLIN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–1565.

United States Court of Veterans Appeals.

Feb. 14, 1994.

Robert Van Vliet and Ward E. Scott, North Haverhill, NH, were on the pleadings for the appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michael P. Butler, Washington, DC, were on the pleadings for the appellee.

Before KRAMER, MANKIN and IVERS, Judges.

MANKIN, Judge:

Elaine S. Allin (appellant) appeals a June 13, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to death benefits for Dependency and Indemnity Compensation for Service–Connected Deaths under 38 U.S.C. § 1318(b)(1) [hereinafter DIC]. The Court affirms in part, vacates in part, and remands this case to the Board.

## I. Factual Background

The veteran served in the United States Army from May 1941 to May 1946. He was captured by the Japanese on April 9, 1942, and survived the Bataan Death March. The veteran was held as a prisoner of war (POW) until August 17, 1945, during which time he suffered serious deprivation, illness, and torture. The veteran's separation physical does not mention his POW experience or show any serious physical or psychological ailments. The record reveals, however, that the veteran developed pneumonia, pellagra, beriberi, and severe tropical ulcers during captivity by the Japanese.

On June 11, 1946, the veteran was granted service connection with a combined rating of 50% for pellagra, inguinal hernia, and bilateral and septal spurs. In May 1947 appellant had a VA neuropsychiatric examination. The final diagnosis was psychoneurosis mixed hysteria and partial social and emotional inadequacy. On June 24, 1947, noncompensable service connection for hookworm and 10% service connection for psychoneurosis were granted. Pellagra, hernia, and bilateral and septal spurs were reduced to a noncompensable level. In February 1948 the veteran was diagnosed with intestinal infestation with hookworm, anxiety reaction with fatigability, deviated nasal septum, and left inguinal hernia. On March 31, 1948, the Regional Office (RO) continued noncompensable ratings for pellagra, a hernia, a septal spur, and hookworm infection, but increased the evaluation for psychoneurosis from 10% to 30%. Following a regularly scheduled examination which showed an improved condition with mild symptomatology, a November 1950 RO decision reduced the veteran's psychoneurosis evaluation to 10%. After a hospital stay in August 1968 due to anxiety reaction, a

September 1968 VA rating decision continued his 10% rating. On July 22, 1969, a rating decision increased the 10% rating to 30% disabling.

In March 1971 the VA examined the veteran for a heart problem which he claimed to be the result of beriberi he contracted as a POW. A clinical record entry dated April 26, 1971, noted he had had several episodes of arterial fibrillation and had been hospitalized for four or five days late in 1968. A neuropsychiatric examination noted that the veteran's "nervousness [was] about the same"; however, he did not exhibit signs of anxiety or severe depression at that time. The diagnosis was anxiety reaction. A rating decision of May 19, 1971, found that the March 1971 VA examination was negative for any residuals of injuries or diseases incurred as a POW, and service connection was denied. The veteran's 30% disability rating for anxiety reaction was continued.

On February 9, 1972, the veteran was admitted to the VA hospital in Manchester, New Hampshire, for treatment of degenerative spinal arthritis and chronic anxiety reaction. While there, the veteran filed an "Income–Net Worth and Employment Statement," in which he stated, "I believe all of my physical and mental disabilities had their start during my 3½ years as a POW in Japan, and request a careful review of my claim on this basis, as I am totally disabled." The VA did not consider this document to be a notice of disagreement (NOD) with the May 19, 1971, RO determination, and no action was taken on the document in that regard. An April 7, 1972, rating decision granted a 70% disability evaluation for the service-connected anxiety neurosis, as well as entitlement to total disability due to individual unemployability effective April 1, 1972. This rating continued in effect until the veteran's death on May 30, 1981, for which the death certificate lists the immediate cause of death as respiratory arrest, due to or as a consequence of squamous cell carcinoma of the larynx with pulmonary metastasis.

The appellant, the veteran's wife, filed an application for DIC on June 2, 1981. The claim was denied by rating decision of July 27, 1981, because the RO found no etiological relationship between the veteran's service-connected disorders and the cause of death. The appellant attempted to reopen her claim for service connection under 38 U.S.C. § 1151 (benefits for persons disabled by treatment or vocational rehabilitation), asserting that the veteran's laryngeal cancer was the result of improper diagnosis and failure to promptly treat the cancer. This claim was denied by rating decision on October 19, 1981. The claim was readjudicated upon receipt of the veteran's complete original VA medical records. Once again the rating board denied service connection.

The appellant sought to reopen her claim for DIC benefits in August 1988. In her statement to reopen, the appellant asserted that the May 19, 1971, rating decision, as well as those before that date, were erroneous because they did not properly rate the veteran for his POW-related disabilities, and because new and material evidence proved the veteran's claims of service connection. On December 20, 1988, the appellant was again denied service connection for the cause of the veteran's death. After reviewing the record, the rating board found that there was no clear and unmistakable error committed in the May 19, 1971, rating decision and those before it, and that the new and material evidence did not support the appellant's contentions. An NOD was filed, which resulted in a June 13, 1990, Board decision affirming the findings of the previous rating decision. The appeal to this Court followed.

## II. Analysis

The appellant claims the Board erred in determining that she was not entitled to DIC, 38 U.S.C. §§ 1301–1323, as a result of the death of her service-connected veteran-husband. The appellant claims entitlement to DIC under 38 U.S.C. §§ 1318(a) and 1318(b)(1), which grants benefits to the surviving spouse and children of a deceased veteran "who dies, not as the result of the veteran's own willful misconduct, and who was in receipt of or entitled to receive ... compensation at the time of death for a service-connected disability that ... (1) was continuously rated totally disabling for a period of 10 or more years immediately preceding death." The Board found that the veter-

an died on May 30, 1981, but had not been rated as totally disabled until April 1, 1972. Consequently, the veteran had only been rated as totally disabled for a period of nine years and two months, ten months short of the statutory threshold for obtaining benefits. In response, the appellant contended that the May 19, 1971, determination of the veteran's service connection contained error, and that but for that error the veteran would have been service connected for total disability at an earlier date, thereby satisfying the ten-year threshold for DIC benefits. The Board, however, found no such error, and it is from those findings that the appellant now appeals.

### A. Failure To Apply Statutory Presumptions

■ The appellant first asserts that the Board erred in finding that there was no clear and unmistakable error (CUE) in the May 19, 1971, determination of service connection. On December 20, 1988, the VA denied the appellant's claim that prior adjudications contained error. The VA based its finding upon its legal conclusion that presumptions relating to certain diseases and disabilities for former POWs, 38 U.S.C. § 1112(b) [hereinafter "former POWs presumptions section"], did not apply retroactively to the veteran's May 19, 1971, decision. The appellant asserts that this finding of law is erroneous, and that but for this alleged CUE, the veteran would have been given a total disability rating at an earlier date, thus accruing the ten-year threshold total disability rating required for paying DIC benefits under 38 U.S.C. § 1318(b)(1).

■ This Court reviews Board determinations regarding clear and unmistakable error to ascertain whether the Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc). In conducting its review, the Court must determine whether there was an error in a prior adjudication of the claim. *Id.* at 313. "Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Id.* An appellant

"must assert more than just a disagreement as to how the facts were weighed or evaluated." *Id.*

The prior decision must display more than an application of incorrect facts or law. *Id.* The outcome of the adjudication must also be predicated upon the application of incorrect facts or law. *Id.* That is, the application of incorrect facts or law must have been outcome determinative, resulting in the incorrect conclusion reached by the Board. It must be "the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made. Errors that would not have changed the outcome are harmless; by definition, such errors do not give rise to the need for revising the previous decision." *Id.* at 313.

■ Thus, CUE may be demonstrated where (1) there is an error in a prior adjudication through the application of facts or law, which were incorrect at the time of their application, *and* (2) that error caused the Board to reach an inaccurate result. In order for this Court to find CUE on review, both elements must be present. Finally, for CUE to be found, the error must be notable "based upon the record and the law that existed at the time of the prior ... [adjudication]." *Id.* at 314.

At the outset we note that the VA erred in its application of the former POWs presumptions section. 38 U.S.C. § 1112(b). It determined that the section in total did not apply retroactively to claims filed prior to an effective date of October 1, 1988, and that as a result, the presumptions regarding service connection of certain injuries and diseases contained in the section did not apply to the May 19, 1971, decision.

In assessing whether the VA has committed CUE in the application of law, this Court will analyze the state of the law as it existed when the determination was made. *Russell,* 3 Vet.App. at 314. The former POWs presumptions section, 38 U.S.C. § 1112(b), has been amended by Acts of Congress in 1959, 1962, 1970, 1981, 1984, 1986, 1988, 1991, 1992, with the 1962, 1981, 1984, 1986, 1988, 1991, and 1992 amendments having specific effective dates. Pub.L. No. 86–187, 73 Stat. 418

(Aug. 25, 1959); Pub.L. No. 86–188, 73 Stat. 418 (Aug. 25, 1959); Pub.L. No. 87–645, 76 Stat. 442 (Sept. 7, 1962); Pub.L. No. 91–376, 84 Stat. 788, 789 (Aug. 12, 1970); Pub.L. No. 97–37, 95 Stat. 936 (Aug. 14, 1981); Pub.L. No. 98–223, 98 Stat. 38, 40 (Mar. 2, 1984); Pub.L. No. 99–576, 100 Stat. 3252 (Oct. 28, 1986); Pub.L. No. 100–321, 102 Stat. 485 (May 20, 1988); Pub.L. No. 100–322, 102 Stat. 534 (May 20, 1988), *renumbered and amended* Pub.L. No. 102–83, 105 Stat. 404, 406 (Aug. 6, 1991); Pub.L. No. 102–86, 105 Stat. 415 (Aug. 14, 1991); Pub.L. No. 102–578, 106 Stat. 4774 (Oct. 30, 1992). In order to determine the applicability of a particular subsection to a veteran's prior adjudication, the Court must examine the subsection(s) under which an appellant is making a CUE claim and the amendment(s) and corresponding effective date(s) which apply to that subsection(s).

■ The appellant claims it was CUE for the VA to fail to apply retroactively subsections (b)(2) regarding beriberi, (b)(5) regarding malnutrition, (b)(6) regarding pellagra, (b)(8) regarding psychosis, (b)(9) regarding anxiety states, (b)(10) regarding dysthymic disorder, (b)(12) regarding post-traumatic osteoarthritis, and (b)(14) regarding irritable bowel syndrome of the former POWs presumptions section. A review of the legislative history of the section reveals that subsections (b)(1)–(8) were added to the section by the 1970 amendment. Pub.L. No. 91–376, 84 Stat. 788, 789 (Aug. 12, 1970). The amendment contained no express effective date, and thus it must be presumed to take effect upon the enactment date of August 12, 1970. The veteran's claim was adjudicated before the BVA on May 19, 1971, after the effective date of the 1970 amendment to the section. Accordingly, the amendment and subsections (b)(1)–(8) of the former POWs presumptions section applied to the adjudication at the time it occurred because they were in force at that time. Thus, it was error for the VA to determine that these subsections did not apply retroactively to the analysis of whether there was CUE in the May 19, 1971, adjudication.

■ A further review of the legislative history of the section yields the conclusion

that subsection (b)(9) regarding states of anxiety was added to the former POWs presumption section by the 1981 amendment. Pub.L. No. 97–37; 95 Stat. 936 (Aug. 14, 1981). The amendment states an effective date of October 1, 1981, and is silent as to any retroactive application. *Id.* Since the amendment states an effective date, and is silent as to any retroactive applicability, it is clear that the Congressional intent is to apply the amendments only as of the effective date. SUTHERLAND ON STATUTORY CONSTRUCTION §§ 20.24, 33.02, 33.08 (5th ed. 1993). Nonetheless, the appellant maintains that because of the remedial nature of these amendments, and Congressional intent to remedy past shortcomings in the processing, treatment, and compensation of former POWs, the amendments should be broadly construed to have an effective date prior to May 1, 1988. The Court declines to accept this contention because the will of Congress as to the applicability of the amendments is clear, and where Congressional will is clear from the face of the statute, this Court will inquire no further. *Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993). Therefore, it was not error for the VA to refuse to apply this subsection to the CUE analysis of the May 19, 1971, decision.

The legislative history of the section also makes clear that subsection (b)(10) regarding dysthymic disorder was added by the 1984 Amendments. Pub.L. No. 98–223, 98 Stat. 38, 40 (Mar. 2, 1984). This amendment stated an effective date of October 1, 1983, and contained no provisions regarding retroactivity. *Id.* For the above reasoning, we hold that it was not error for the VA to refuse to apply this provision to the present CUE analysis.

The section's legislative history indicates that subsection (b)(12) regarding post-traumatic osteoarthritis was enacted pursuant to the 1986 amendment. Pub.L. No. 99–576, 100 Stat. 3252 (Oct. 28, 1986). This amendment stated an effective date of October 1, 1986, and contained no provisions regarding retroactive application. *Id.* Accordingly, we hold it was not error for the VA to refuse to apply this provision to the CUE analysis.

The 1988 amendments added subsection (b)(14) regarding irritable bowel syndrome. Pub.L. No. 100–321, 102 Stat. 485 (May 20, 1988); Pub.L. No. 100–322, 102 Stat. 534 (May 20, 1988), *renumbered and amended* Pub.L. No. 102–83, 105 Stat. 404, 406 (Aug. 6, 1991). These amendments contain a specific effective date of May 1, 1988, and no provisions regarding retroactive applicability. *Id.* Therefore, the VA was not in error in refusing to apply this provision to the instant CUE analysis.

Although the appellant has demonstrated that the VA failed to properly apply the former POWs presumptions for psychosis, 38 U.S.C. § 1112(b)(8), beriberi, 38 U.S.C. § 1112(b)(2), and pellagra, 38 U.S.C. § 1112(b)(6), she must also demonstrate that correction of this error would have produced a different result in the outcome of this case. To satisfy this requirement, the appellant might prove any one of several factors. First, the appellant might prove that the veteran should have been rated as totally disabled due to a psychiatric disorder for at least ten years prior to his death. Or, second, the appellant might prove that the veteran should have been assigned that rating for pellagra which, when combined with the existing disability rating of 30%, would have been sufficient to produce the necessary total disability rating. Or, finally, the appellant might prove that the veteran should have been granted service connection and that rating for beriberi heart disease which, when combined with the existing disability rating of 30%, would produce the necessary total disability rating.

Proper application of the former POWs presumptions section, 38 U.S.C. § 1112(b)(8), however, would not assist the appellant in proving that the veteran was totally disabled due to a psychiatric disorder for at least ten years prior to his death. The presumption is intended only to assist in proving service connection. *Id.* It is not intended to provide a means of increasing a disability rating once service connection is established. *See id.* Accordingly, proper application of the statutory presumption would not assist the appellant in demonstrating that the 30% disability rating due to psychiatric disorder

should be increased to total disability. Therefore, the Board appropriately held there was no CUE, and we will affirm.

The proper application of the former POWs presumptions section, 38 U.S.C. § 1112(b)(2), to prove that the veteran should have been granted service connection for beriberi heart disease, which when combined with the existing disability rating of 30% would produce the necessary total disability rating is also unavailing. There is a lack of medical testimony or opinion at the time of the May 19, 1971, decision that the veteran was suffering from residuals of beriberi heart disease. While it is true there is some evidence that the veteran had several episodes of auricular fibrillation, there was no diagnosis of heart disease. These episodes cannot be associated with beriberi heart disease in the absence of a diagnosis that the veteran was suffering from heart disease. Therefore, application of the statutory presumption to this claim for service connection would not yield a different result, and consequently we affirm the Board's finding that there was no CUE.

The proper application of the former POWs presumptions section, 38 U.S.C. § 1112(b)(6), to prove that the veteran should have been granted service connection for pellagra, which when combined with the existing disability rating of 30% would produce the necessary total disability rating, is equally unproductive. There is no medical testimony or opinion at the time of the May 19, 1971, decision concluding that the veteran was suffering from residuals of pellagra. The evidence of record at the time of the decision simply does not indicate that the veteran suffered any of the symptoms of pellagra. Thus, the service-connection presumption for that disease, if properly applied to the May 19, 1971, determination, would not yield a different result. Therefore, the Board appropriately determined there was no CUE, and we will affirm.

**B. VA's Failure to Respond to NOD**

*1. CUE Claim*

 Having found that the Board's determination that the May 19, 1971, decision was not the product of CUE is not arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law, we next turn our attention to the appellant's contention that the veteran's "Income–Net Worth and Employment Statement" is an NOD to the May 19, 1971, decision and the VA's failure to respond was CUE. The appellant contends that the veteran filed a timely NOD satisfying 38 U.S.C. § 7105(b)(1) (NOD requirements), and the VA's failure to act upon the NOD rendered the April 7, 1972, rating decision an administrative reversal of the May 19, 1971, decision. However, the appellant failed to first raise this contention before the Board.

In order for this Court to have jurisdiction to review a claim of clear and unmistakable error, "the issue must have been adjudicated below." *Russell,* 3 Vet.App. at 315. "The necessary jurisdictional 'hook' for this Court to act is a decision of the BVA on the specific issue of 'clear and unmistakable error.' " *Id.* Thus, a claimant may not raise this issue for the first time before this Court; such a request is for de novo review "over decisions that are not within our jurisdiction." *Id.* In this case, there was no specific adjudication of the CUE issue because it was not raised before the Board. Therefore, this Court does not now have jurisdiction to review the issue; however, this holding does not preclude the appellant from raising the issue in a new proceeding before the Board.

### 2. Error of Law Claim

■ Next, we find that the appellant's additional contention that the veteran filed an NOD, and that the VA's failure to respond to this NOD was an error of law, was not fairly raised in the proceedings below. An appellant's Form 1–9 Appeal to Board of Veterans Appeals [hereinafter 1–9 form] perfects the appeal to the BVA and frames the issues to be considered. *Myers v. Derwinski,* 1 Vet. App. 127, 129 (1991). In reviewing an appellant's appeal, the Board is not free to give the 1–9 form a narrow construction, but must "review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal." *Id.* at 130.

The "liberal reading" requirement does not require the Board to conduct an exercise in prognostication, but only requires that it consider all issues reasonably raised by the appellant's substantive appeal. 38 C.F.R. § 20.202 (1993) (Board will construe arguments in a substantive appeal "in a liberal manner ... but the Board may dismiss any appeal which fails to allege specific error of fact or law"). Thus, there must be some indication in the appellant's 1–9 form that he wishes to raise a particular issue before the Board. The indication need not be express or highly detailed; it must only reasonably raise the issue. We find that the appellant did not raise the issue regarding the VA's failure to respond to the veteran's NOD in any of the documents constituting her substantive appeal. This issue was first presented to this Court, which has only powers of review, 38 U.S.C. § 7252(b), not powers of first impression, and accordingly will not address this matter at this time.

> "Review in the Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C.[ ] § 7252(b)[ ]. In this case, [the appellant] has never before submitted [this] ... issue to the BVA. Thus, [the appellant] ... has not exhausted [her] administrative remedies, and the Court will not preempt the BVA and address the merits of this claim.

*Horowitz v. Brown,* 5 Vet.App. 217, 225 (1993); *see also Herzog v. Derwinski,* 2 Vet. App. 502, 503 (1992); *Branham v. Derwinski,* 1 Vet.App. 93, 94 (1991); *Mokal v. Derwinski,* 1 Vet.App. 12, 15 (1990). This holding, however, does not preclude the appellant's raising this issue in a new proceeding before the Board.

### C. Reasons or Bases of BVA Decision of June 13, 1990

■ The appellant claims that the Board's June 13, 1990, decision fails to provide sufficient reasons or bases regarding its discussion of the new and material evidence presented by the appellant. In 1988, the appellant attempted to reopen her claim for DIC benefits with the statements of the veteran's psychiatrist and VA doctor, Dr. McAllister, and former POWs who had served with the veteran. The Secretary concedes that the BVA failed to articulate the reasons or bases for rejecting this evidence, and further failed

to make credibility findings regarding this evidence. *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990).

■ Satisfactory lay or other evidence of an injury or disease incurred in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions, or hardships of such service even though there is no official record of incurrence or aggravation. 38 U.S.C. § 1154; 38 C.F.R. § 3.304(d); *See Godwin v. Derwinski*, 1 Vet.App. 419, 426 (1991). Thus, the BVA must provide its reasons or bases for rejecting the appellant's new and material evidence consisting of statements of former POWs who served with the veteran. Furthermore, the VA has lost all records pertaining to Dr. McAllister's treatment of the veteran, and they have never been provided to the appellant despite her repeated requests. Consequently, the BVA bears a heightened obligation to "explain its findings and conclusions and to consider carefully the benefit of the doubt rule." *O'Hare v. Derwinski*, 1 Vet.App. 365, 367 (1991). Finally, "the conclusion of the examining VA psychiatrist is a medical conclusion, ... which the BVA is not free to ignore or disregard." *Willis v. Derwinski*, 1 Vet.App. 66, 70 (1991). Consequently, the Board must give careful consideration to the statements of Dr. McAllister. *Cf. Harder v. Brown*, 5 Vet.App. 183, 188 (1993) (Court remanded case where BVA, inter alia, gave treating physician's diagnoses lesser weight in the face of no contrary evidence). *But see Guerrieri v. Brown*, 4 Vet.App. 467, 471 (1993) (rejecting broad application of "treating physician" rule in VA benefits claims). Therefore, these matters are vacated and remanded to the Board for an appropriate discussion of reasons or bases for the Board's findings.

### D. CUE in Medical Examinations of 1969 and 1971

■ Last, the appellant claims the VA rating decisions of July 1969 and May 1971 constituted CUE because the medical examinations upon which they were based did not follow the procedures set out by the VA. VA, PHYSICIAN'S GUIDE FOR DISABILITY EVALUATION EXAMINATIONS [hereinafter VA PHYSI-

CIANS GUIDE]. The VA PHYSICIANS GUIDE is the document that provides guidance to VA doctors in assessing injuries or diseases for which a claimant wishes to be service connected. It is not, however, mandated by either statute or regulation, and it does not appear in the statutes or regulations governing disability evaluation examinations. Therefore, the VA PHYSICIANS GUIDE is not a regulatory or statutory provision.

■ Since the VA PHYSICIANS GUIDE is neither a statute nor a regulation, the failure to properly apply its guidelines cannot constitute CUE. CUE is an administrative failure to apply the correct statutory or regulatory provisions to the correct and relevant facts. *Oppenheimer v. Derwinski*, 1 Vet.App. 370 (1991). Thus, in order for CUE to exist, there must have been a failure to apply the appropriate regulations or statutes.

This is for good reason. The VA PHYSICIANS GUIDE is just that, a guide to VA doctors providing generalized direction for the proper conduct of disability examinations. Out of necessity, it leaves latitude for the examining doctor to exercise his discretion in conducting a proper examination of each individual case. Since no case will be exactly the same as any other case, a formal regulatory or statutory procedure setting out the matters to be examined in every case would be far too restrictive. Thus, we find no compelling reason to apply the CUE analysis to this matter, and indeed find many good reasons to avoid applying it.

### III. Conclusion

Therefore, upon consideration of the record and the parties' briefs, the Court AFFIRMS in part, and VACATES in part the June 13, 1990, decision of the Board of Veterans' Appeals, and REMANDS the case for readjudication consistent with this opinion.