# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1385

BOBBY R. SHARP, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided September 6, 2017)

*Perry A. Pirsch* and *John S. Berry*, both of Lincoln, Nebraska, were on the brief for the appellant.

*Meghan K. Flanz,* Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Thomas E. Sullivan*, Deputy Chief Counsel; and *Tamika J. Springs*, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, BARTLEY, and GREENBERG, *Judges*.

BARTLEY, *Judge*: Veteran Bobby R. Sharp appeals through counsel a March 16, 2016, Board of Veterans' Appeals (Board) decision denying disability evaluations in excess of 10% for right and left shoulder, hand, and elbow/forearm disabilities. Record (R.) at 2-52.[1] This appeal is timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to clarify the responsibilities of a VA examiner and the Board when an examiner is asked to provide an opinion as to additional functional loss during flare-ups of a musculoskeletal disability, pursuant to *DeLuca v. Brown*,

---

[1] The Board remanded the issue of entitlement to a total disability evaluation based on individual unemployability. R. at 48-52. Because a remand is not a final decision of the Board subject to judicial review, the Court does not have jurisdiction to consider that issue at this time. *See Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2017). The Board also denied initial evaluations in excess of 10% for right and left wrist disabilities. Because Mr. Sharp has not challenged these portions of the Board decision, the appeal as to those matters will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued on appeal and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same). Last, the Board granted initial 10% evaluations for right and left elbow/forearm and hand disabilities prior to September 8, 2015. R. at 48. As these findings are favorable to the veteran, the Court will not disturb them. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority.").

8 Vet.App. 202 (1995), and the examiner states that he or she is unable to offer such an opinion without resorting to speculation based on the fact that the examination was not performed during a flare. Because, as explained below, neither the Board nor the VA examiner in this case complied with the responsibilities set forth in *Jones v. Shinseki*, 23 Vet.App. 382 (2010), the Court will set aside the March 2016 Board decision and remand the matter for additional development and readjudication consistent with this decision.

## I. FACTS

Mr. Sharp served on active duty in the U.S. Army from March 1952 to March 1954, including combat service in Korea. R. at 3, 1017.[2]

In June 2004, he sought service connection for, inter alia, "arthritis to include bursitis." R. at 1308-17. In August 2005, the VA regional office (RO) denied service connection for arthritis/bursitis in the right and left shoulders, hands, and forearms. R. at 1238-48. The veteran timely disagreed with this decision and the matters were ultimately appealed to the Board, which denied the claims in June 2008. R. at 1012-21; *see* R. at 1031-33, 1134-39, 1145-57. The veteran appealed to this Court. R. at 990. In March 2009, the Court granted the parties' joint motion for remand in which they agreed that the Board failed to provide adequate reasons or bases in certain respects. R. at 968-75. In August 2009, the Board, in turn, remanded the claims for further development. R. at 952-58. Mr. Sharp underwent VA joints examinations in May 2010; the examiner opined that the musculoskeletal disabilities were at least as likely as not related to service. R. at 298-311, 316-39.

In April 2012, based on the May 2010 opinion, the RO granted service connection for right and left shoulder arthritis, assigning 10% evaluations for each; the RO also granted service connection for right and left hand and elbow/forearm conditions, assigning noncompensable evaluations for each. R. at 228-40, 274-84. Mr. Sharp disagreed with the evaluations assigned and perfected an appeal to the Board. R. at 214-24.

In November 2014, the Board remanded the claims for the provision of another VA examination. R. at 177-83. The Board instructed the examiner to "conduct range of motion testing and render specific findings as to whether, during the examination, there is objective evidence of

---

[2] The page in the record before the agency cited by the parties at which the veteran's DD Form 214 appears (page 173) is not included in the record of proceedings filed with the Court.

pain on motion, weakness, excess fatigability, and/or incoordination associated with the service[-]connected bilateral shoulder, . . . hand, and elbow disabilities," as well as "indicate the point at which pain begins" and "whether, and to what extent, the [v]eteran experiences likely functional loss due to pain and/or any of the other symptoms noted above during flare-ups and/or with repeated use." R. at 181; *see also* R. at 164 (VA's request that the examiner provide the information sought "if feasible" and, if not feasible, "an explanation as to why the opinion cannot be rendered").

Mr. Sharp underwent the ordered examinations in September 2015. The examiner diagnosed bilateral shoulder arthritis and bursitis, bilateral elbow olecranon spurs, and bilateral hand degenerative arthritis; with respect to each disability, the examiner measured range of motion and noted any limitations thereof, both on initial and repetitive testing, and assessed other factors potentially resulting in functional loss, such as weakness, instability, or the presence of pain. *See generally* R. at 121-51. With respect to each disability, the examiner noted the veteran's reports of experiencing periodic flares, indicated that the examination was not taking place during a flare-up, and recorded functional impairment articulated by the veteran during those periods. With respect to the shoulders, the veteran reported additional functional loss during flare periods in terms of increased pain and lack of endurance and asserted that flares were precipitated by "driving the mower" and lifting. R. at 122-23. Similarly, Mr. Sharp stated that he experienced "constant aching" pain of 10 out of 10 during elbow/forearm flares, R. at 134, and severe, aching pain, moderate weakness in grip strength, lack of endurance, and mild decrease in fine motor skills during hand joint flares, R. at 142-43. As relevant to the present appeal, regarding all joint disabilities, the examiner indicated that the examinations were either medically consistent, or neither medically consistent nor inconsistent, with the veteran's descriptions of functional loss during flare-up periods, but the examiner further stated: "It is not possible without mere speculation to estimate either loss of [range of motion] or describe loss of function during flares because there is no conceptual or empirical basis for making such a determination without directly observing function under these circumstances." R. at 125-27 (shoulders), 136-37 (elbows/forearms), 146-48 (hands).

In September 2015, the RO granted 10% evaluations, but no higher, for right and left elbow/forearm and hand disabilities effective September 8, 2015; however, it continued to deny compensable evaluations for these disabilities prior to that date and to deny evaluations in excess

3

of 10% for right and left shoulder disabilities. R. at 91-120. Because the RO decision resulted in less than a total grant of the benefits sought, the matters returned to the Board. R. at 68.

In the March 2016 decision on appeal, the Board granted 10% evaluations for right and left elbow/forearm and hand disabilities prior to September 8, 2015, but denied evaluations in excess of 10% for these and right and left shoulder disabilities for any period during the pendency of the claims. The Board found that VA substantially complied with its November 2014 remand instructions and that the medical evidence of record, including the September 2015 VA examination and opinion, was adequate for evaluation purposes. R. at 9-10. The Board addressed the September 2015 examiner's physical findings, acknowledged his statements that he could not offer the opinions requested in the November 2014 remand instructions without resorting to speculation, and concluded that the examiner's reasons constituted "an adequate explanation for not being able to comment on additional [functional] loss during . . . flare-ups." R. at 22; *accord* R. at 29, 37. This appeal followed.

## II. ANALYSIS

Mr. Sharp argues that the Board clearly erred in accepting the September 2015 examination as adequate, clearly erred in finding substantial compliance with the November 2014 remand instructions, and offered inadequate reasons or bases to support its determinations to the contrary; the veteran's arguments are all predicated on a single assertion, namely, that the Board's November 2014 remand order required the September 2015 examiner, pursuant to *DeLuca* and its progeny, to offer an estimate as to additional functional loss during flares regardless of whether the veteran was undergoing a flare-up at the time of the examination and that the examiner failed to do so. Appellant's Brief (Br.) at 3-14; Reply Br. at 1-4. The Secretary disputes these contentions, arguing that, under *Jones*, the examiner was permitted to decline to offer an opinion on the grounds that doing so would require resort to speculation. Secretary's Br. at 10-17.

A remand by the Board or Court confers on the claimant a legal right to substantial compliance with the remand order. *Donnellan v. Shinseki*, 24 Vet.App. 167, 176 (2010); *Dyment v. West*, 13 Vet.App. 141, 147 (1999); *Stegall v. West*, 11 Vet.App. 268, 271 (1998). When a claim is remanded to provide the claimant with a VA medical examination or opinion, the Secretary must ensure that the examination or opinion provided is adequate. *Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007). A VA medical examination or opinion is adequate "where it is based upon

consideration of the veteran's prior medical history and examinations" and "describes the disability . . . in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)). The Court reviews for clear error the Board's determination that a medical examination or opinion was adequate. *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

With any finding on a material issue of fact and law presented on the record, the Board must support its determination with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that determination and facilitates review in this Court. 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). In its statement of reasons or bases, the Board must analyze the credibility and probative value of evidence, account for the persuasiveness of evidence, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

## A. Governing Law and Practice

Addressing the adequacy of the VA medical examination and opinion and the propriety of the Board's analysis in this case requires the Court to review two related issues: the duties of a VA examiner when assessing a musculoskeletal disability and the circumstances in which the Board may accept as adequate a VA examiner's statement that an opinion cannot be provided without resorting to speculation.

First, joint disabilities are evaluated in light of criteria found in applicable diagnostic codes in the rating schedule for the musculoskeletal system. *See generally* 38 C.F.R. § 4.71a (2017). A veteran may, however, be entitled to a higher disability evaluation than that supported by mechanical application of the schedule where there is evidence that his or her disability causes additional functional loss—i.e., "the inability . . . to perform the normal working movements of the body with normal excursion, strength, speed, coordination[,] and endurance"—including as due to pain. 38 C.F.R. § 4.40 (2017). A higher evaluation may also be awarded where there is a reduction of a joint's normal excursion of movement in different planes, including changes in the

joint's range of movement, strength, fatigability, or coordination. 38 C.F.R. § 4.45 (2017). The Court explained in *DeLuca* that a VA joints examination that fails to consider the factors listed in §§ 4.40 and 4.45 is inadequate for evaluation purposes. 8 Vet.App.at 206-07. Specifically, for an examination to comply with § 4.40, the examiner must "express an opinion on whether pain could significantly limit functional ability" and the examiner's determination in that regard "should, if feasible, be portrayed in terms of the degree of additional range-of-motion loss due to pain on use or *during flare-ups*." *Id.* at 206 (emphasis added) (internal quotation marks and alteration omitted); *see Mitchell v. Shinseki*, 25 Vet.App. 32, 44 (2011) (summarizing *DeLuca* and concluding that an examination was inadequate because it "did not discuss whether any functional loss was attributable to pain during flare-ups, despite noting the appellant's assertions [thereof]"). Flare-ups, in other words, must be factored into an examiner's assessment of functional loss.

*DeLuca*'s requirements are reflected in the *VA Clinician's Guide*, which "provides information for performing examinations that meet the requirements of federal law" and "explains the law in clinical terms." VA CLINICIAN'S GUIDE § 0.1 (March 2002). When conducting evaluations for musculoskeletal disabilities, examiners are instructed to inquire whether there are periods of flare and, if the answer is yes, to state their severity, frequency, and duration; name the precipitating and alleviating factors; and estimate, "per [the] veteran," to what extent, if any, they affect functional impairment. *See generally id.*, ch. 11. These instructions appear in worksheets pertaining to musculoskeletal examinations of the spine, shoulders, elbows, wrists, hips, knees, ankles, feet, and hands, as well as muscles.

Whether VA is obliged to attempt to schedule an examination during a flare-up depends upon the specifics of the disability in a particular case. For example, in *Ardison*, the veteran alleged that his chronic skin condition would periodically worsen during "active stages" and spread to other parts of his body. 6 Vet.App. at 408-09. Because Mr. Ardison's flares could last for weeks at a time, the Court remanded the claim and instructed the Board to "provide for the conduct of an adequate examination during the active stage" of his condition. *Id.* at 408. Relying on *Ardison*, the veteran in *Voerth v. West* argued that he was entitled to a VA examination during a period when his pilonidal cyst was enflamed. 13 Vet.App. 117, 122 (1999). The Court rejected this contention based in part on the fact that the skin condition in *Ardison* would undergo periods of inflammation lasting "weeks or months," whereas Mr. Voerth's cyst flares "would only last a day or two." *Id.* at 123. The Court recognized that "the practical aspects of scheduling a medical

6

examination within this short time period" of flares lasting a day or two would be unworkable. *Id*. Thus, the frequency, duration, and severity of flares are necessary considerations when determining whether VA must attempt to schedule an examination during a flare.

Last, the Court has recognized circumstances in which an examiner's conclusion that an "opinion is not possible without resort to speculation is a medical conclusion just as much as a firm diagnosis or a conclusive [medical] opinion." *Jones*, 23 Vet.App. at 390. In *Jones*, VA examiners stated that they could not opine as to etiologies of various disabilities without resorting to speculation. *Id.* at 385. Although recognizing that obtaining medical opinions is part of VA's duty to assist, the Court rejected the veteran's assertions that an examination is necessarily inadequate every time an examiner states that a non-speculative decision cannot be reached or that VA must "proceed through multiple iterations of medical opinions until it declares that no further examinations would assist the claimant." *Id.* at 391.

Nevertheless, to ensure that the phrase did "not become a mantra that short circuits the careful consideration to which each . . . case is entitled," *id.* at 389, the Court carefully explained when the Board could treat as adequate an examiner's statement that he or she could not offer an opinion without resorting to speculation. First, it must be clear that an examiner has "considered all procurable and assembled data" before stating that an opinion cannot be reached. *Id.* at 390 (internal quotation marks omitted). When the record is unclear as to whether a VA examiner has done this—for example, "by obtaining all tests and records that might reasonably illuminate the medical analysis"—the Board must remand the matter for clarification or additional development. *Id*. Second, the examiner must explain the basis for his or her conclusion that a non-speculative opinion cannot be offered. *Id.* In other words, it must be apparent that the inability to provide an opinion without resorting to speculation "reflect[s] the limitation of knowledge in the medical community at large" and not a limitation—whether based on lack of expertise, insufficient information, or unprocured testing—of the individual examiner. *Id.* As part of this obligation, a VA examiner should identify when specific facts cannot be determined. *Id. Jones*, therefore, permits the Board to accept a VA examiner's statement that he or she cannot offer an opinion without resorting to speculation, but only after determining that this is not based on the absence of procurable information or on a particular examiner's shortcomings or general aversion to offering an opinion on issues not directly observed.

B. Application to the Present Case

Applying these principles to the present case, the Court holds that the Board failed to provide adequate reasons or bases for its determination that the September 2015 VA examinations were adequate for evaluation purposes and, hence, did not ensure substantial compliance with its November 2014 remand instructions.

Initially, Mr. Sharp asserts that, to be adequate, a medical examination must occur during a flare to ensure a proper disability evaluation. Appellant's Br. at 4 (citing *Ardison*, 6 Vet.App. at 408). But, as discussed above, *Ardison* did not establish such a rule. *See Voerth*, 13 Vet.App. at 122-23 (concluding, notwithstanding *Ardison*, that the Board did not clearly err in finding a VA medical examination adequate even though it was not conducted during a flare-up). Rather, the lesson of *Ardison* and *Voerth* is that once VA determines that an examination is warranted, its obligation to schedule that examination during a flare is contingent upon the frequency and duration of flares in a specific case. Of course, VA often may not be in possession of this information when undertaking to provide and schedule an examination. And even when such information is eventually acquired, the impracticalities alluded to in *Voerth* still obtain. Where a condition's flares are irregular, unpredictable, infrequent, or brief, it is unclear how VA would schedule a flare-coincident examination as a practical matter, given its resources and duty to provide timely examinations as part of innumerable claims.

The record in the present case does not indicate the frequency or duration of flares or what precipitates them, other than the September 2015 examiner's notation of Mr. Sharp's report that "driving the mower" and lifting bring on shoulder flares. R. at 122. Thus, there is no basis for the Court to conclude that the Board erred in not deeming the September 2015 examination inadequate solely on the basis that it was not conducted during a flare of Mr. Sharp's shoulder, elbow/forearm, and hand disabilities.

Fortunately, neither the law nor VA practice requires that an examination be conducted during a flare for the functional impairment caused by flares to be taken into account. Instead, *DeLuca* and its progeny clearly, albeit implicitly, anticipated that examiners would need to estimate the functional loss that would occur during flares, as is evident from the fact that Mr. DeLuca's left shoulder disorder flared only "at times." 8 Vet.App. at 204; *see, e.g.*, *Mitchell*, 25 Vet.App. at 44 (finding inadequate a medical opinion where an examiner did not offer an opinion as to additional function loss during flares "despite noting the appellant's assertions" regarding the

frequency, duration, and severity of those flares); *cf. Petitti v. McDonald*, 27 Vet.App. 415, 429-30 (2015) (holding that credible lay evidence of functional loss due to pain, including during flare periods, observed outside of the VA examination context could constitute objective evidence in support of an evaluation).

The critical question in assessing the adequacy of an examination not conducted during a flare is whether the examiner was sufficiently informed of and conveyed any additional or increased symptoms and limitations experienced during flares. *See Mitchell*, 25 Vet.App. at 44. Moreover, because the September 2015 VA examiner declined to offer an opinion as to additional function loss during flares "without directly observing function under these circumstances," R. at 125, her position is at odds with VA's guidance on the matter. As noted above, the *VA Clinician's Guide* makes explicit what *DeLuca* clearly implied: it instructs examiners when evaluating certain musculoskeletal conditions to obtain information about the severity, frequency, duration, precipitating and alleviating factors, and extent of functional impairment of flares from the veterans themselves.[3] *See generally* VA CLINICIAN'S GUIDE, ch. 11.

Mr. Sharp is, therefore, correct when he argues that the September 2015 examination was inadequate because the examiner, although acknowledging that the veteran was not then suffering from a flare of any of his conditions, failed to ascertain adequate information—i.e., frequency, duration, characteristics, severity, or functional loss—regarding his flares by alternative means. Appellant's Br. at 8. Because the VA examiner did not elicit relevant information as to the veteran's flares or ask him to describe the additional functional loss, if any, he suffered during flares and then estimate the veteran's functional loss due to flares based on all the evidence of record—including the veteran's lay information—or explain why she could not do so, the September 2015 examination was inadequate for evaluation purposes and the Board's finding to the contrary was clearly erroneous.[4] *See D'Aries*, 22 Vet.App. at 104; *Stefl*, 21 Vet.App. at 123; *see also Mitchell*, 25 Vet.App. at 44; *DeLuca*, 8 Vet.App.at 206-07.

---

[3] The Court acknowledges that the *VA Clinician's Guide* is not binding on VA examiners. VA CLINICIAN'S GUIDE § 1.1 ("The Clinician's Guide and any of its parts (worksheets) are intended solely as a guide for clinicians, and it is not legally binding on a clinician to perform all portions of the examination protocol."); *see Camacho v. Nicholson*, 21 Vet.App. 360, 364 (2007) ("The VA Clinician's Guide . . . is a guide to VA doctors providing generalized direction for the proper conduct of disability examinations."); *Allin v. Brown*, 6 Vet.App. 207, 214 (1994) (holding that the VA *Physician's Guide for Disability Evaluation Examinations* is not mandated by either statute or regulation, does not appear in the statutes or regulations governing disability evaluation examinations, and is not a document that is binding upon VA); *see also Doucette v. Shulkin*, 28 Vet.App. 366, 374 (2017) (Schoelen, J., dissenting).

[4] Inasmuch as Mr. Sharp argued that the Board did not ensure that an adequate VA examination addressing

The Secretary interposes that the September 2015 examination was not inadequate because, consistent with *Jones*, the VA examiner explained why it was not feasible for her to provide an opinion on functional loss due to flares. Secretary's Br. at 12. The examiner stated: "It is not possible without mere speculation to estimate either loss of [range of motion] or describe loss of function during flares because there is no conceptual or empirical basis for making such a determination without directly observing function under these circumstances." R. at 125-27, 136-37, 146-48. The Board determined that this was "an adequate explanation for not being able to comment on additional [functional] loss during . . . flare-ups." R. at 22; *accord* R. at 29, 37. According to the Secretary, the statement by the examiner and the reasons proffered by the Board satisfied the requirements of *Jones*. We disagree.

As just explained, the Court's case law and VA guidelines anticipate that examiners will offer flare opinions based on estimates derived from information procured from relevant sources, including the lay statements of veterans. Although the September 2015 VA examiner couched her refusal to offer an opinion regarding flares in broad terms, stating there is "no conceptual or empirical basis for making such a determination without directly observing function under these circumstances," *e.g.*, R. at 125-27, the apparent universality of this statement is contradicted by *VA's Clinician's Guide*, which specifically advises examiners to try to procure information necessary to render an opinion regarding flares from *veterans*. Aside from acknowledging the reality that, because of administrative constraints, examiners may not be examining veterans during flares, this guidance is a recognition that direct observation of functional impairment during a flare-up is *not* a prerequisite to offering an opinion.

*Jones* is not to the contrary. Although we observed there that, in certain circumstances "it would be inappropriate for VA to demand a conclusive opinion from a physician" who represented that he or she could not provide one, we clearly noted that such representation could be made only after "evaluation of the 'procurable and assembled' information." 23 Vet.App. at 390 (quoting 38 C.F.R. § 3.102). Before concluding that a requested opinion cannot be provided without resorting to speculation, an examiner must "do[ ] all that reasonably should be done to become

flare was obtained, the Court also agrees that the Board failed to ensure substantial compliance with its November 2014 remand instructions. *See Donnellan*, 24 Vet.App. at 176 (concluding that the Board did not ensure substantial compliance with a prior remand order where the examiner failed to answer a specific question regarding aggravation posed by the Board); *Stegall*, 11 Vet.App. at 271 (remanding where "the record reveal[ed] that the VA medical examination did not comply with the directions found in the [Board] remand order").

informed about a case." *Id*. at 391. When the record is ambiguous as to whether sufficient information was obtained, "it is the Board's duty to remand for further development." *Id*. at 390. Here, however, the September 2015 VA examiner did not elicit information from Mr. Sharp regarding his flares' severity, frequency, duration, or functional loss manifestations, nor did she indicate whether such information could be gleaned from medical records or other sources available to her. Moreover, before the Board can accept an examiner's statement that an opinion cannot be provided without resort to speculation, it must be clear that this is predicated on a lack of knowledge among the "medical community at large" and not the insufficient knowledge of the specific examiner. *Id*.

Curiously, the Secretary contends that Mr. Sharp's reports of pain and loss of endurance during flares "do not lend themselves to approximating degrees of functional loss" and "are not consistent with trying to approximate degrees of functional loss." Secretary's Br. at 14. If he is arguing that the record does not currently contain sufficient detail to permit the September 2015 examiner to offer an opinion as to functional loss during flares, if any, in terms of additional range of motion loss, the Court agrees, with the caveat that the examiner herself was responsible for failing to elicit such information. However, to the extent that the Secretary is asserting that a veteran's statements can never provide an adequate basis on which to formulate an opinion regarding additional functional loss during flares, that assertion is inconsistent with this Court's case law and VA's own practice as set forth in *VA's Clinician's Guide*.[5]

Although the September 2015 examiner cannot be compelled to provide an opinion where, consistent with the duties discussed above, she cannot do so without resorting to mere speculation and explains the basis for this inability as per *Jones*, *see* 23 Vet.App. at 390, that does not relieve the Board from the obligation to determine whether the examiner's inability results from a personal lack of knowledge or experience and, if so, to attempt to obtain an opinion from a more qualified examiner. *See id*. at 390-91. In the present circumstances, there is no indication in the Board decision that the September 2015 VA examiner obtained all "procurable medical evidence" before declining to offer an opinion as to flares. Nor, in light of VA's guidance to its clinicians, did the Board sufficiently address whether the examiner's professed need to observe the veteran during flares of his conditions reflected something other than her individual inability to provide the

---

[5] This is not to say that an examiner or the Board is required to accept a veteran's allegations regarding his or her flare-ups if such allegations are inconsistent with other reliable evidence.

11

requested opinion.  As such, the Court cannot conclude that the Board complied with *Jones* in accepting the September 2015 VA examination as adequate.

Because the record was not adequate to permit the Board to decide Mr. Sharp's claims for evaluations in excess of 10% for right and left shoulder, hand, and elbow/forearm disabilities, the Court will set aside the March 2016 decision and remand the matter.  *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (explaining that remand is required where, inter alia, "the record is otherwise inadequate"); *see also Jones*, 23 Vet.App. at 393-94.  The Board must obtain a new VA medical examination and opinion that adequately addresses additional functional loss, if any, experienced during flares and substantially complies with the Board's November 2014 remand order.  Mr. Sharp is free to present any additional arguments and evidence to the Board on remand in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).  The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

Upon consideration of the foregoing, the Court will SET ASIDE the portions of the March 16, 2016, Board decision denying evaluations in excess of 10% for right and left shoulder, hand, and elbow/forearm disabilities and REMAND those matters for additional development and readjudication consistent with this decision.  The balance of the appeal is DISMISSED.