Kerry A. VOERTH, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 95–904.

United States Court of Appeals
for Veterans Claims.

Oct. 15, 1999.

Michael P. Horan and Linda Blauhut were on the pleading for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Richard Mayerick were on the pleading for the appellee.

Before HOLDAWAY, IVERS, and GREENE, Judges.

HOLDAWAY, Judge:

The appellant, Kerry A. Voerth, appeals a June 1995 decision of the Board of Veterans' Appeals (BVA or Board). The Board determined that his claims for service connection for a seizure disorder and a neck disorder were not well grounded. The Board also denied a compensable rating for a recurrent pilonidal cyst. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The appellant served on active duty in the U.S. Army from July 1976 to April 1977. On his induction examination, he reported that he had sustained a head injury at the age of 14. His service medical records did not indicate that he experienced any head or neck injuries while on active duty. The records did indicate that in March 1977, he reported that he had a cyst. In June 1978, he was treated at a VA medical center and was diagnosed with a pilonidal cyst. R. at 54. He subsequently filed a claim for compensation for the cyst, as well as for head and neck injuries that he claimed were as a result of multiple head injuries in service. In December 1978, VA provided him with a medical examination for compensation and pension purposes. The appellant reported to the examining physician that he suffered from head and neck pain due to head injuries sustained in service while parachuting. R. at 59. However, the physician examined his head and neck and found them "normal." R. at 60. VA also provided x-rays of his neck and spine which found no relevant abnormality. R. at 63.

In January 1979, the appellant requested another examination because he still experienced neck and spine pain which he

maintained were related to his in-service head injuries. R. at 64. VA provided the examination which essentially found nothing wrong with the appellant. The examining physician diagnosed him with headaches of undetermined cause, possibly migraines. R. at 66. Later that month, a VA regional office (VARO) determined that the cyst was service connected but assigned a noncompensable rating. The VARO also denied service connection for the head, neck, and leg pain.

In December 1990, the appellant attempted to reopen his claims. He reiterated his assertion that he had sustained multiple head injuries during service. In December 1990, the VARO declined to reopen his claim. The appellant then appealed to the Board. In his appeal to the Board, the appellant stated that his private physician, Dr. Dennis Novak, diagnosed him with a "crushed cranial vertebrae." R. at 99. In August 1991, the appellant testified before a personal hearing. Regarding his claim for a pilonidal cyst, he stated that about twice a year he suffered from inflammation of his cyst. He reported that the cyst would be tender but that there was never any drainage nor would it limit his functioning. R. at 103. He stated that he would take antibiotics which would then reduce the inflammation. He further described the circumstances surrounding his in-service head injuries. He also reported having seizures which he attributes to his in-service head injuries. R. at 108.

Pursuant to his claim, VA wrote a letter requesting information from Dr. Novak and from the VA medical center (VAMC) in Gainesville, Florida, where the appellant was then being treated. In August 1991, Dr. Novak replied that he had "no information concerning disability due to neck injury." R. at 115. Dr. Novak stated that he treated the appellant for anxiety attacks and an ankle injury but that he had not treated the appellant since 1988. The VAMC reported that he underwent a detoxification program for alcohol abuse from November to December 1990 but a physical examination showed no pertinent defects. R. at 79. The VAMC also reported that in May 1991 he was treated again for alcohol abuse and complaints of head injuries, but the report did not provide a diagnosis. R. at 82.

In June 1991, the appellant was treated by Dr. R.A. Cabreza for a seizure disorder. R. at 86. The medical reports from this treatment indicate that Dr. Cabreza wrote a prescription for the appellant but did not discuss the etiology of the seizure disorder. R. at 87. In November 1991, the appellant was treated on an outpatient basis by VA for a seizure disorder. The report indicated that his seizure disorder was most likely a result of alcohol abuse. R. at 123.

In November 1992, VA provided the appellant with a medical examination for compensation and pension purposes conducted by Dr. Richard Wade. Dr. Wade diagnosed him with a seizure disorder but did not state whether or not the disorder was related to his military service. R. at 163. In January 1993, Mr. Leonard Ward, a veteran who served with the appellant, submitted a sworn statement whereby he recalled that the appellant had sustained a head injury in service. R. at 167.

After reviewing the evidence, the Board found that the appellant had not presented a well-grounded claim for his seizure and neck disorders. The Board found that the appellant failed to present evidence of an in-service injury or a medical nexus between any in-service injury and his present conditions. The Board also denied a compensable rating for his pilonidal cyst, finding that the appellant did not manifest symptoms which warranted a compensable rating. Furthermore, the Board found that the cyst did not interfere with his employment.

## II. ANALYSIS

### A. Well–Grounded Claims for Seizure and Neck Disorders

Under 38 U.S.C. § 5107(a), a claimant has the initial burden of showing

that a claim is well grounded. *See Grott-veit v. Brown,* 5 Vet.App. 91, 92 (1993). For a claim to be well grounded, there must be: (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604, 1996 WL 56489 (Fed.Cir.1996) (table); *Epps v. Brown,* 9 Vet.App. 341, 343–44 (1996), *aff'd sub nom. Epps v. Gober,* 126 F.3d 1464, 1468 (Fed. Cir.1997); *cert. denied sub nom. Epps v. West,* 524 U.S. 940, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998). To be considered well grounded, a claim must be more than an allegation; there must be some supporting evidence. *See Tirpak v. Derwinski,* 2 Vet. App. 609, 611 (1992). "[W]here the determinative issue involves medical causation or medical diagnosis, competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required." *Grott-veit,* 5 Vet.App. at 93; *see also Heuer v. Brown,* 7 Vet.App. 379, 384 (1995).

▮ A lay person is competent to describe symptoms, but is not competent to offer evidence which requires medical knowledge, such as a diagnosis or a determination of etiology. *See Espiritu v. Der-winski,* 2 Vet.App. 492, 494–95 (1992). For the purpose of determining whether a claim is well grounded, the credibility of the evidence in support of the claim is presumed. *Robinette v. Brown,* 8 Vet. App. 69, 75 (1995). If the only evidence on a medical issue is the testimony of a lay person, the claimant does not meet the burden imposed by section 5107(a) and does not have a well-grounded claim. *See Grottveit,* 5 Vet.App. at 93. Whether a claim is well grounded is a question of law which the Court reviews de novo. *See King v. Brown,* 5 Vet.App. 19 (1993).

▮ In this case, the appellant has failed to submit medical evidence providing a nexus between his in-service injury and his current disability. Unsupported by medical evidence, a claimant's personal belief, however sincere, cannot form the basis of a well-grounded claim. *Moray v. Brown,* 5 Vet.App. 211, 214 (1993); *Grott-veit,* 5 Vet.App. at 92. The appellant argues, however, that he suffers from a chronic condition and, thus, his allegations are sufficient to well ground his claim. *See* 38 C.F.R. § 3.303(b); *Savage v. Gober,* 10 Vet.App. 488 (1997). The appellant, however, misinterprets the holding in *Savage.* In that case, this Court clearly held that 38 C.F.R. § 3.303 does not relieve the appellant of his burden of providing a medical nexus. Rather, a claimant diagnosed with a chronic condition must still provide a medical nexus between his current condition and the putative continuous symptomatology. Until the appellant presents competent medical evidence to provide a relationship between his current disability and either an in-service injury or his continuous symptomatology, his claim cannot be considered well grounded.

The appellant further argues that the Board erred because it failed to take into account the statement of Mr. Ward who served with the appellant in the military. Mr. Ward testified that the appellant had suffered a head injury during a training exercise. A review of the Board's decision reveals that the Board failed to discuss Mr. Ward's assertions of the appellant's in-service injury. In fact, the Board found that the appellant had not submitted evidence of an in-service injury. For the purposes of establishing a well-grounded claim, the truth of Mr. Ward's statement must be presumed. *See Robinette, supra.* The Board also is not free to ignore evidence and must provide reasons and bases for its decision. *See* 38 U.S.C. § 7104(d)(1), *see Williams v. Brown,* 4 Vet.App. 270 (1993). Here, the Board failed to account for this piece of evidence. However, this error is not prejudicial to the appellant because even if the Board had accounted for this evidence, the appellant still would not have submitted a well-

grounded claim as he did not provide the required medical nexus evidence as discussed above. *See* 38 U.S.C. § 7261(b) (the Court shall take account of nonprejudicial error).

Finally, the appellant contends that the Board violated the appellant's due process rights because it found that his claim was not well grounded while the VARO had denied his claim on the merits. The appellant argues that the change in the reasoning for the denial of his claim was prejudicial because he was not offered the opportunity to respond to these arguments and establish a well-grounded claim. *See Bernard v. Brown*, 4 Vet.App. 384 (1993) (Board must determine whether the appellant was prejudiced when the Board's grounds for deciding the case are different from the VARO's). Here, the Board analyzed its procedural obligations under *Bernard* and determined that the appellant was not prejudiced because essentially the VARO granted him a greater review than he was entitled. Because it is the claimants obligation to provide a well-grounded claim, the Court agrees with the Board's analysis in this case. *Cf. Edenfield v. Brown*, 8 Vet.App. 384 (1995) (en banc) (appellant not prejudiced when Court denies a claim as not well grounded when Board denied claim on the merits).

## B. Duty to Assist

■ Once a claimant has submitted a well-grounded claim, the Secretary has a duty to assist the claimant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). Included in this duty is the responsibility of VA to obtain any relevant records from the Social Security Administration (SSA). *See Murincsak v. Derwinski*, 2 Vet.App. 363, 370 (1992). However, the duty to obtain SSA records, as incorporated within the duty to assist, is not triggered until the appellant has submitted a well-grounded claim. *See id.; see also Anderson v. Brown*, 9 Vet.App. 542 (1996). As illustrated above, the appellant has failed to present a well-grounded claim

regarding these claims, and therefore, VA had no duty to obtain his SSA records.

## C. Duty to Inform

■ Even if a claimant has not submitted a well-grounded claim, VA is not without obligations to a claimant. "When a claimant identifies medical evidence that may complete an application for benefits but is not in the possession of VA, VA must advise the claimant to attempt to obtain that evidence." *Brewer v. West*, 11 Vet.App. 228, 236 (1998) (interpreting 38 U.S.C. § 5103(a)). In other words, when a claimant informs VA that evidence exists which may make the claim well-grounded, VA has a duty to suggest that the claimant submit that evidence. *Id.*

The appellant argues that VA violated its duty to inform when it failed to request clarification from Dr. Novak when he reported that he had never treated the appellant for a neck injury but enclosed an x-ray report which examined his neck and spine. The appellant's argument confuses the duty to inform with the duty to assist. Here, the appellant stated in his attempt to reopen that he had been treated by Dr. Novak. VA then had a duty to inform the appellant that he should submit medical records from Dr. Novak to complete his claim to reopen. VA, however, went beyond its statutory duty and wrote a letter to Dr. Novak requesting, not just some, but all of his medical records concerning the appellant. Dr. Novak then responded that he did not have any medical records but for some unknown reason enclosed an x-ray. Regardless of Dr. Novak's seemingly contradictory response, VA not only satisfied its duty, but went beyond what is required.

Furthermore, the appellant mentioned the names of several other doctors who had recently treated him for his injuries. However, the appellant neither produced any evidence from these doctors nor gave any indication that these doctors possessed information which would complete a well-grounded claim. *See Robinette*, 8 Vet.App.

at 75–76 (finding that a remand was required to substantiate appellant's hearsay allegations that his doctor had told him that his injury was connected to his military service). Therefore, the Court finds no error in the Board's decision on this issue. *Cf. Edenfield, supra* (appellant is not prejudiced when Court finds claim not well grounded when Board denied claim on the merits).

### D. Pilonidal Cyst

As noted above, the Board continued the noncompensable rating for the appellant's pilonidal cyst. The Board's decision as to the appropriate disability rating is a finding of fact which may only be overturned if it is "clearly erroneous." *See Baker v. West,* 11 Vet.App. 163 (1998). The Court may not substitute its own judgment for that of the Board's even if it might not have reached the same conclusion. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). If there is a "plausible basis" in the record for the findings, the Board's decision must be affirmed. *Id.*

In this case, the Court finds a plausible basis for the Board's findings. Since there is no diagnostic code (DC) specifically for cysts, the Board rated the disability as a scar under 38 C.F.R. § 4.118, DC 7803, the most analogous skin condition. *See* 38 C.F.R. § 4.20 (providing that unlisted conditions shall be rated by the code for the most "closely related" disease or injury). Under DC 7803, a 10% disability evaluation is warranted when the scar is "poorly nourished, with repeated ulceration." The Board also considered DC 7804 and DC 7805. DC 7804 requires the Board to assign a 10% disability evaluation when the scar is "tender and painful on objective demonstration." DC 7805 requires the Board to assign a disability rating commensurate with the "[r]ate on limitation of function or part affected." Applying these rating provisions to the facts, by the appellant's own testimony, the scar is neither ulcerous nor does it limit his function. The crux of the appellant's argument is that from time to time, his cyst will become painful to the touch. However, his last medical examination, conducted by Dr. Wade, found that his cyst was "asymptomatic." Furthermore, the appellant has not presented any recent medical evidence to demonstrate that his cyst becomes inflamed. Accordingly, the Board did not err in concluding that the appellant had failed to demonstrate that he did not meet the criteria for a compensable rating.

The appellant argues, pursuant to *Ardison v. Brown,* 6 Vet.App. 405 (1994), that he is entitled to a medical examination when the cyst becomes inflamed. In *Ardison,* the appellant sought an increased disability rating for tinea pedis (athlete's foot). *Id.* at 405. His tinea pedis was a chronic condition which would periodically worsen and spread to other areas of the body. *Id.* at 406. This Court held that when a claimant's medical history indicates that his condition undergoes periods of remission and recurrence, VA is required to provide a medical examination during the period of recurrence in order to provide a proper disability rating. *Id.* at 407. The Court found that an examination during the remission phase of the condition did not "accurately reflect the elements of the present disability." *Id.* (citing 38 C.F.R. § 4.2).

After a review of the facts of this case, the Court holds that the Board was not required to order a medical examination at the time the appellant's cyst became inflamed. There are two characteristics which distinguish the facts of this case from the facts of *Ardison.* The primary consideration is the fact that in *Ardison* the worsened condition impaired his earning capacity, while in the case at bar the appellant testified that his worsened condition does not impact his employment. Occupational impairment is the primary component of the disability rating. *See* 38 C.F.R. § 4.1. This section states:

> The [disability ratings] represent as far as can practicably be determined the

average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. Since the appellant testified that his cyst did not impact his employment, even when inflamed, the Board was not required to provide a medical examination at the time of inflammation.

The second consideration is the fact that in *Ardison* the appellant's worsened condition would last weeks or months while here the appellant's worsened condition would only last a day or two. Beyond the practical aspects of scheduling a medical examination within this short time period, temporal considerations are important due to the fact that they impact the functional impairment of the body. *See* 38 C.F.R. § 4.10 (disability ratings based on "the ability of the body as a whole ... to function under the ordinary conditions of daily life"). A person who experiences a worsened condition only for a few days out of a year simply is less impaired than someone who suffers from the worsened condition for weeks or months. A medical examination is required for the latter during the period of recurrence in order to adequately determine the extent of the worsened condition, its duration, and its impact on employability.

The Court further notes that certain medical conditions specifically allow for compensable ratings even though the condition lasts only a short period. *Cf.* 38 C.F.R. § 4.114, DC 7305 (specifically providing a 10% disability rating for duodenal ulcers "with recurring symptoms once or twice yearly"). However, the rating provision in this case does not have such a provision, nor can the Court add such a provision. 38 U.S.C. § 7252(b). For these reasons, the Board could properly conclude, based on the facts before them, that the medical examination of Dr. Wade accurately reflected the elements of the appellant's disability and that the appellant's disability warranted a noncompensable rating.

## III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the Board's decision fulfilled the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.*

The decision of the Board is AFFIRMED.