Citation Nr: 1829594 
Decision Date: 06/21/18 Archive Date: 07/02/18

DOCKET NO. 09-10 759 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for kidney disease, to include as due to exposure to contaminated water at Camp Lejeune, North Carolina.

2. Entitlement to an initial rating in excess of 10 percent for left lower extremity radiculopathy prior to February 16, 2016, a rating in excess of 20 percent for the period from February 16, 2016, to May 31, 2018, and a compensable rating from June 1, 2018, to include the propriety of the reduction in rating from 20 percent to 0 percent.

3. Entitlement to service connection for diabetes mellitus.

4. Entitlement to service connection for hypertension.

5. Entitlement to service connection for a left hip disability.

6. Entitlement to a rating in excess of 20 percent for a lumbar spine disability.


REPRESENTATION

Appellant represented by: John S. Berry, Attorney


ATTORNEY FOR THE BOARD

R. Behlen, Associate Counsel


INTRODUCTION

The appellant had a period of active duty for training (ACDUTRA) from July 1976 to October 1976; and he served on active duty in the Marine Corps from July 1978 to March 1979. He is the recipient of the Good Conduct Medal.

This matter comes before the Board of Veterans' Appeals (Board) from multiple rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia.

A September 2008 rating decision granted service connection for left lower extremity radiculopathy and assigned an initial 10 percent rating. The Court of Appeals for Veterans Claims (Court) vacated and remanded a September 2011 Board decision, in relevant part, to the extent that it denied entitlement to an initial rating in excess of 10 percent for left lower extremity radiculopathy, pursuant to a Joint Motion for Partial Remand. The Board remanded the matter in July 2013, and denied entitlement to an initial rating in excess of 10 percent for left lower extremity radiculopathy in April 2015. In the meantime, a May 2016 rating decision increased the evaluation of left lower extremity radiculopathy from 10 percent disabling to 20, effective February 16, 2016. 

The Court vacated and remanded the Board's denial of entitlement to an initial rating in excess of 10 percent for left lower extremity radiculopathy in a July 2016 Memorandum Decision. The Board remanded the matter again in April 2017. A September 2017 rating decision proposed that the evaluation of left lower extremity radiculopathy be decreased from 20 percent disabling to 0 percent. A Supplemental Statement of the Case (SSOC) was issued in February 2018. A March 2018 rating decision effectuated the decrease in evaluation of left lower extremity radiculopathy from 20 percent disabling to 0 percent, effective June 1, 2018.

An NOD was also received in April 2018, which expressed disagreement with the reduction in rating from 20 percent disabling to 0 percent for left lower extremity radiculopathy, which had been effectuated in a March 2018 rating decision.

With regard to the May 2016 rating decision, issued prior to the July 2016 Memorandum Decision, which increased the evaluation of left lower extremity radiculopathy from 10 percent disabling to 20, effective February 16, 2016, the appellant's attorney filed a VA Form 21-0958 Notice of Disagreement in June 2016. On such Form 21-0958, the attorney checked off "effective date of award" and "evaluation of disability" as the areas of disagreement. 

Although the May 2016 rating decision was a partial grant of benefits, the issue of entitlement to an initial increased rating for left lower extremity radiculopathy has remained on appeal, to include the period discussed in such rating decision. The RO issued an SOC in September 2017 which addressed the issues of (1) entitlement to an increased rating; and (2) entitlement to an effective date earlier than February 16, 2016, for the assignment of a 20 percent rating. Such SOC noted that the evidence showed that the neurological symptoms associated with the left lower extremity were not associated with his service-connected lumbar spine disability as previously determined. Thus, the appellant was informed that a proposal to reduce the evaluation for left lower extremity radiculopathy would be forthcoming. In any event, no timely substantive appeal was received with respect to this September 2017 SOC. 

As the issue before the Board is entitlement to an initial increased rating for left lower extremity radiculopathy, however, such includes entitlement to a compensable rating from June 1, 2018. Thus, the Board has recharacterized the issue on appeal to include the propriety of the rating reduction. Given the appellant's assertions, the evidence of record, and the outcome below, no prejudice to the appellant has resulted. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993). 

Entitlement to service connection for kidney disease was denied in a March 2016 rating decision. The appellant filed a timely Notice of Disagreement (NOD), received in March 2016. An SOC was issued in September 2017 and a copy was provided to the appellant's attorney. In February 2018, after the expiration of the appeal period, the attorney submitted a substantive appeal. Although the appellant's attorney failed to submit an appeal in a timely fashion, the RO treated such substantive appeal as timely; thus, the Board will accept jurisdiction. See Percy v. Shinseki, 23 Vet. App. 37, 45 (2009) (discussing actions which may constitute a waiver of the requirement for filing a timely substantive appeal).

The issues of entitlement to service connection for diabetes mellitus and hypertension were denied in a provisional April 2013 rating decision. Such rating decision became final in April 2014. In its April 2015 remand, the Board found that a timely NOD had been received in October 2014 with respect to such issues and remanded the issues for issuance of an SOC. See Manlincon v. West, 12 Vet. App. 238 (1999). As explained below, however, such an SOC has not yet been issued. See Stegall v. West, 11 Vet. App. 268 (1998).

The issues of entitlement to service connection for a left hip disability and an increased rating for a lumbar spine disability were denied in a September 2008 rating decision. Such were most recently before the Board in April 2015.

The Board also notes that in a December 2016 rating decision, the RO granted service connection for right lower extremity sciatic radiculopathy and assigned an initial 10 percent rating, effective November 25, 2015. On October 27, 2017, VA received a NOD with the initial rating assigned. Generally, the filing of a NOD confers jurisdiction on the Board and the next step is for the Agency of Original Jurisdiction (AOJ) to issue an SOC. See Manlincon, supra. However, because the Board's review of the record reveals that the RO is still taking action on this issue, the Board will not exercise formal jurisdiction over it at this time. 

The issues of entitlement to service connection for kidney disease, diabetes mellitus, hypertension, and a left hip disability, and entitlement to a rating in excess of 20 percent for a lumbar spine disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. In a March 2018 rating decision, the RO reduced the rating for the appellant's service-connected left lower extremity radiculopathy from 20 percent disabling to 0 percent, effective June 1, 2018.

2. The 20 percent disability rating for the appellant's service-connected left lower extremity radiculopathy had been in effect since February 16, 2016, which was a period of less than five years.

3. The RO's action in reducing the rating for the appellant's service-connected left lower extremity radiculopathy from 20 percent to 0 percent effective June 1, 2018, resulted in a reduction of compensation payments.

4. The evidence of record considered by the RO, with regard to the September 2017 proposal to reduce the disability rating and the March 2018 rating decision which effectuated such reduction, did not support a finding that the appellant's left lower extremity disability actually improved, resulting in an improvement in his ability to function under the ordinary conditions of life and work, nor did the RO make such a finding.

5. Prior to February 16, 2016, the appellant's left lower extremity radiculopathy was manifested by symptoms approximating no more than mild incomplete paralysis. Since February 16, 2016, such has been manifested by symptoms approximating no more than moderate incomplete paralysis.


CONCLUSIONS OF LAW

1. The reduction of the rating for left lower extremity radiculopathy from 20 percent to 0 percent, effective June 1, 2018, was not proper. Restoration of the 20 percent disability rating for left lower extremity radiculopathy, effective June 1, 2018, is warranted. 38 U.S.C. §§ 1155, 5112, 5107 (2012); 38 C.F.R. §§ 3.105, 3.344(c), 4.124a, Diagnostic Code 8720 (2017).

2. The criteria for an initial schedular rating in excess of 10 percent for left lower extremity radiculopathy, prior to February 16, 2016, and a rating in excess of 20 percent thereafter, have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.321, 4.124a, Diagnostic Code 8720 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

In a brief which accompanied the April 2018 NOD regarding the reduction for left lower extremity radiculopathy, the appellant's attorney argued that the reduction was improper because the August 2017 VA examination report was inadequate for rating purposes. As discussed infra, the Board agrees that the reduction in rating was improper; thus, the 20 percent rating has been restored, effective June 1, 2018. An identical brief, this time dated May 2018, was received in May 2018. The Board does not agree, however, that the examination report is inadequate for rating purposes with respect to the increased rating claim.

The attorney argues that there has not been substantial compliance with the terms of the April 2017 remand because the examination did not occur during a flare-up. The remand ordered that the AOJ was to:

Attempt, to the extent that it is possible, to have the examination conducted during a period of elevation or flare-up of radiculopathy symptomatology so that an accurate clinical picture of the Veteran's level of impairment when his disabilities are at their most severe may be obtained. Prior to scheduling the examination, communicate with the Veteran regarding how it would be best to accomplish that.

The Board finds that there has been substantial compliance with this directive. Stegall v. West, 11 Vet. App. 268 (1998). The appellant contacted VA to inform them that he was experiencing a flare-up; and he was instructed to come in for an examination that day. 

In Ardison v. Brown, 6 Vet. App. 405, 408 (1994), the Court held that, in a case where a worsened condition lasted weeks or months, VA may not rely on a medical examination performed during the inactive stage of veteran's fluctuating condition. However, in Voerth v. West, 13 Vet. App. 117, (1999), the Court found that where a veteran's disability, in its recurrent state, did not affect his or her employability and the worsened condition did not last more than a few days, an examination during a flare-up was not required.

In the instant matter, the appellant has competently and credibly reported that his flare-ups, or periods of exacerbation, last for 20 to 25 minutes. The facts of the instant case are distinguishable from those in Ardison, and are more akin to those in Voerth, as the periods of worsened condition are extremely limited, in fact even moreso than in Voerth. Thus, it would not be feasible to schedule the appellant for an examination during a 20-25 minute flare-up.

The attorney also argues that the examination report was inadequate because (1) the examiner attributed the appellant's left lower extremity symptomatology to sciatica rather than radiculopathy, the latter of which is service-connected; and (2) the examiner considered the appellant's reported flare-ups to be "exacerbations of pain," rather than flare-ups. As discussed infra, the Board has afforded the appellant the benefit of the doubt as to whether his left lower extremity symptomatology is attributable to his service-connected left lower extremity radiculopathy. Thus, the August 2017 examiner's opinions as to the etiology of his symptoms are not being relied upon by the Board. Likewise, although the attorney believes additional electrodiagnostic studies should have been performed because the remand directive stated that "any necessary evaluations, studies, and tests should be accomplished," for the purposes of the instant decision, the Board has considered all left lower extremity symptoms as manifestations of his service-connected disability. Thus, there was no need for any testing to be performed to attribute such symptoms.

With respect to flare-ups, the Board finds that, regardless of what the examiner called the appellant's reported flare-ups, the examination report is not deficient because the Board considers the appellant's reported flare-ups to be flare-ups and the examination report provides sufficient information about the severity and frequency of such episodes for rating purposes.

The attorney finally argues that the examination is inadequate in light of the Court's recent holding in Sharp v. Shulkin, 29 Vet. App. 26 (2017), that, pursuant to VA regulations and the VA Clinician's Guide, when conducting evaluations for musculoskeletal disabilities, VA examiners are obligated to inquire whether there are periods of flare-ups and, if so, to state their "severity, frequency, and duration; name the precipitating and alleviating factors; and estimate, 'per [the] veteran,' to what extent, if any, they affect functional impairment." Id. at 32. 

However, the instant matter is with regard to radiculopathy, which is not a musculoskeletal disability. Thus, Sharp is inapplicable. The attorney likewise incorrectly looks to 38 C.F.R. §§ 4.40, 4.45, and 4.56 in an attempt to show the August 2017 examination report as inadequate. Like Sharp, 38 C.F.R. §§ 4.40, 4.45, and 4.56 deal with musculoskeletal disabilities rather than neurologic ones.

Neither the appellant nor his representative has raised any other issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Standard of Proof

The standard of proof to be applied in decisions on claims for VA benefits is set forth in 38 U.S.C. § 5107(b). Under that provision, VA shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990). "It is in recognition of our debt to our veterans that society has [determined that,] [b]y tradition and by statute, the benefit of the doubt belongs to the veteran." See Gilbert, 1 Vet. App. at 54.

Propriety of the Reduction

Applicable Law

When a reduction in the rating of a service-connected disability or employability status is contemplated and the lower rating would result in a reduction or discontinuance of compensation payments, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary must be notified at his or her last address of record of the contemplated action and furnished detailed reasons therefor. The beneficiary must be given 60 days for presentation of additional evidence to show that compensation payments should be continued at the present level. 38 C.F.R. § 3.105(e). If additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires. Id.

In addition, the veteran will be informed that he or she may request a predetermination hearing, provided that the request is received by VA within 30 days from the date of the notice. If a timely request is received, VA will notify the beneficiary in writing of the time and place of the hearing at least 10 days in advance of the scheduled hearing date. The hearing will be conducted by VA personnel who did not participate in the proposed adverse action and who will bear the decision-making responsibility. If a predetermination hearing is timely requested, benefit payments shall be continued at the previously established level pending a final determination concerning the proposed action. 38 C.F.R. § 3.105(h).

These are such important safeguards that the U.S. Court of Appeals for Veterans Claims has held that where VA has reduced a veteran's rating without observance of applicable law and regulation, such a rating is void ab initio. Brown v. Brown, 5 Vet. App. 413, 422 (1993). Thus, to remedy such cases, the decision must be reversed as unlawful. Dofflemyer v. Derwinski, 2 Vet. App. 277 (1992).

Under 38 C.F.R. § 3.344(c), when a disability rating has been in effect for less than five years, reexaminations disclosing improvement will warrant a rating reduction.

Rating agencies will handle cases affected by change of medical findings or diagnosis so as to produce the greatest degree of stability of disability evaluations consistent with the laws and VA regulations governing disability compensation and pension. It is essential that the entire record of examination and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete, including all special examinations indicated as a result of general examination and the entire case history. Examinations which are less thorough than those on which payments were originally based will not be used as a basis for reduction. 

Ratings for diseases subject to temporary or episodic improvement, such as epilepsy, asthma, ulcers, and many skin diseases, will not be reduced on the basis of any one examination, except in those instances where all of the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. Moreover, where material improvement in the physical or mental condition is clearly reflected, the rating agency will consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. 38 C.F.R. § 3.344(a). The above considerations are required for ratings which have continued for long periods at the same level, i.e. five years or more. 38 C.F.R. § 3.344(c).

Once the five-year requirement of 38 C.F.R. § 3.344 has been satisfied, a reduction of the pertinent rating percentages can only be effected if the reduction complies with the provisions of 38 C.F.R. § 3.344(a). The reduction can be justified only if there is a showing by a preponderance of the evidence that the rating reduction is warranted. Brown v. Brown, 5 Vet. App. 413 (1993).

Specifically, the U.S. Court of Appeals for Veterans Claims requires that adjudicators must: 1) review the entire record of examinations and medical and industrial history to ascertain whether the recent examination(s) on which the reduction was based were full and complete; 2) decline to use examinations which are less full and complete than those on which payments were authorized or continued; 3) not reduce an evaluation except in cases where all the evidence clearly warrants a finding of material improvement. In addition, where material improvement in the physical condition is clearly shown, the rating agency must consider whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. Brown, at 419-20.

Prior to reducing a veteran's disability rating, however, VA is required to "comply with several general VA regulations applicable to all rating-reduction cases, regardless of the rating level or the length of time that the rating has been in effect." Faust v. West, 13 Vet. App. 342, 349 (2000), citing 38 C.F.R. § 4.1, 4.2, 4.10. These general provisions "impose a clear requirement that VA rating reductions, as with all VA rating decisions, be based upon review of the entire history of the veteran's disability." Id., citing Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991).

The U.S. Court of Appeals for Veterans Claims has held that such review requires VA

to ascertain, based upon review of the entire recorded history of the condition, whether the evidence reflects an actual change in the disability and whether the examination reports reflecting such change are based upon thorough examinations. . . . Thus, in any rating-reduction case not only must it be determined that an improvement in a disability has actually occurred but also that that improvement actually reflects an improvement in the veteran's ability to function under the ordinary conditions of life and work.

Brown, 5 Vet. App. at 421; see also Schafrath, 1 Vet. App. at 594 ("[t]hese requirements for evaluation of the complete medical history of the claimant's condition operate to protect claimants against adverse decisions based on a single, incomplete[,] or inaccurate report and to enable VA to make a more precise evaluation of the level of disability and of any changes in the condition"). See also 38 C.F.R. § 3.344(c).

In considering the propriety of a reduction, the Board must focus on the evidence available to the RO at the time the reduction was effectuated, although post-reduction medical evidence may be considered in the context of evaluating whether the conditions had demonstrated actual improvement. Dofflemyer v. Derwinski, 2 Vet. App. 277 (1992).

Analysis

Service connection for left lower extremity radiculopathy was granted in a September 2008 rating decision, effective October 13, 2007, and an initial 10 percent rating was assigned. The rating was increased to 20 percent, effective February 16, 2016.

A September 2017 rating decision proposed a reduction in rating to 0 percent because the August 2017 VA examiner opined that the appellant's symptomatology was suggestive of chronic mixed sensory polyneuropathy, most likely due to poorly-controlled nonservice-connected diabetes. A March 2018 rating decision effectuated such reduction, effective June 1, 2018. Such reduction would reduce the appellant's compensation because it would reduce his combined evaluation from 50 percent to 40 percent.

The 20 percent rating for left lower extremity radiculopathy had been in effect since February 16, 2016, a period of less than five years. 

The Board notes that the initial grant of service connection was for left lower extremity symptoms including numbness and pain. Service connection was granted because such symptomatology was found to be secondary to the appellant's service-connected lumbar spine disability.

However, the August 2017 VA examiner opined that the appellant's left lower extremity symptoms were due to sciatica and chronic mixed sensory polyneuropathy, most likely due to diabetes, rather than radiculopathy caused by his service-connected lumbar spine disability. 

For reasons unclear to the Board, rather than propose a severance of service connection, the RO proposed a reduction instead. However, by basing the reduction on this single VA examination report which attributes the appellant's service-connected left lower extremity symptomatology as secondary to currently nonservice-connected diabetes mellitus rather than his service-connected lumbar spine disability, the action taken by the RO appears to be akin to the severance of service connection, rather than a reduction of the disability evaluation assigned.

In order to support a reduction, the evidence must show that the appellant's service-connected left lower extremity disability materially improved overall resulting in an improvement in his ability to function under the ordinary conditions of life and work. See e.g. Peyton v. Derwinski, 1 Vet. App. 282 (1990) (in claims for restoration, the central question is not whether the schedular criteria for a particular rating are met as in a claim for increase, but whether the criteria for reduction were met).

In this case, the Board finds that the record does not support a finding that the appellant's left lower extremity disability actually improved, resulting in an improvement in his ability to function under the ordinary conditions of life and work. 38 C.F.R. § 3.344(a). The RO made no such finding.

In view of the foregoing, the Board finds that there is no clear basis upon which to conclude that the August 2017 examination results reflected an actual improvement in the appellant's left lower extremity disability. Rather, the appellant's symptomatology was simply attributed to another disorder. The RO failed to consider whether the appellant experienced an improvement in such disability which would be maintained under the ordinary conditions of life. In this case, the RO made no such findings, instead basing the reduction solely on the fact that the August 2017 VA examiner attributed the appellant's symptomatology to a nonservice-connected disability.

For the foregoing reasons and bases, the Board finds that the evidence before the RO at the time of the March 2018 rating reduction decision did not show an actual improvement in the appellant's service-connected left lower extremity radiculopathy disability warranting the reduction from 20 percent to 0 percent. The Board further notes that, in neither the September 2017 nor the March 2018 rating decisions did the RO make an attempt at comparing the manifestations of the appellant's disability prior to the August 2017 examination report to the current manifestations, nor did the RO consider the functional loss caused by the appellant's disability, including the impact on his ability to work. 

As a result, the RO reduced the appellant's rating on the basis of medical information that did not clearly show that any improvement observed at the time of the August 2017 examination would result in an improvement in his ability to function under the ordinary conditions of life and work. Since the burden is on VA to show that a rating reduction was warranted, and, for the reasons discussed above, VA failed to meet this burden, the 20 percent rating must be restored, effective June 1, 2018, subject to the law and regulations governing the payment of monetary benefits. Dofflemeyer v. Derwinski, 2 Vet. App. 277 (1992) (holding that where VA has reduced a Veteran's disability rating without observing the applicable law and regulations, such a rating is void ab initio and restoration is required).

Entitlement to an Increased Rating

Applicable Law

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if that disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3.

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991).

Where a claimant appeals the initial rating assigned following an award of service connection, evidence contemporaneous with the claim for service connection and with the rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an [initial] rating on appeal was erroneous. . . ." Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence obtained during the appeal period indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.

The appellant's left lower extremity radiculopathy is rated under Diagnostic Code (DC) 8720. Under DC 8720, a maximum schedular rating of 80 percent is awarded for complete paralysis of the sciatic nerve. With complete paralysis, the foot dangles and drops, there is no active movement possible of muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. When there is incomplete paralysis, a 60 percent rating is in order for severe disability with marked muscular atrophy. Moderately severe incomplete paralysis warrants a 40 percent evaluation, and moderate incomplete paralysis warrants a 20 percent rating. Finally, mild incomplete paralysis warrants a 10 percent rating. See 38 C.F.R. § 4.124a, Diagnostic Code 8720.

The words "mild," "moderate," and "severe" are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6. The term "incomplete paralysis," with peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to the partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. See 38 C.F.R. § 4.124a, Diagnostic Codes 8510 - 8730.

Background

A January 2008 VA examination report notes signs of intervertebral disc syndrome with sensory deficit and motor weakness of the left leg. Reflexes were within normal limits at 2+. The examiner stated that the most likely peripheral nerve involved is the left deep peroneal nerve.

VA outpatient treatment records note that the appellant was seen in March 2009 with complaints of radiating pain and occasional numbness in the left lower extremity. Examination revealed normal and full range of motion of all extremities. Muscle tone was appropriate and strength was 5/5.

A March 2010 VA examination report notes that the appellant walked steady with a normal gait. He did not require any assistive device for ambulation. He endorsed abnormal sensation in the left lower extremity. Neurological evaluation revealed that lumbar spine and sacral spine sensory function was impaired to pinprick and feather sensory testing at L4. There was deficit of the left front leg and left medial leg at L5. There was sensory deficit of the left lateral leg, left dorsal foot, and left lateral foot at S1. There was sensory deficit of the left lateral leg and left lateral foot. The most likely peripheral nerve affected was the deep peroneal nerve. The left lower extremity reflexes revealed knee and ankle jerk of 2+. There were no signs of pathologic reflexes. Cutaneous reflexes were normal. There was no effect on the appellant's usual occupation or daily activities. He reported flare-ups with respect to his back and described the functional impairment as back pain.

An August 2010 emergency room note states that the appellant complained of back pain. There was no weakness or numbness, nor was there pain down the back of the leg. Straight leg raise test was negative. Lower extremities were neurovascularly intact.

A September 2010 clinical note states that the appellant complained of chronic low back and left leg pain. He reported that he had been told he needed surgery, but he was not ready to undergo such. He noted that pain medications provided only partial relief. Examination revealed no gross focal motor or sensory deficits.

An April 2011 clinical note states that the appellant complained of radiating pain into the bilateral lower extremities and paresthesias in the feet. Positive lying straight leg raise test bilaterally at less than 45 degrees was noted. Bilateral lower extremity strength was intact, however. The assessment was radiculopathy.

A July 2013 emergency room note states that the appellant reported some tingling down the left leg from his low back. Gait was within normal limits and strength was 5/5 in the bilateral legs.

An August 2013 VA spine examination report notes the appellant's complaints of intermittent mild pain, usually dull, of the left lower extremity. There were no other signs or symptoms of radiculopathy. Examination revealed that muscle strength testing and reflex and sensory examinations were all normal. There was no atrophy. Straight leg testing was negative. He reported pain on the left side in the front and inside of his thigh to the front of the knee, and down to the left foot, but stopping short of the toes. The examiner noted that the appellant's pain did not follow typical dermatome. He had pain in the left groin and down the front of the leg. He used a cane regularly. With regard to functional impact, the appellant was noted to have worked in security until 2012 when his condition got worse and he could not continue the job. Activities of daily living were okay; he could dress and undress, and handle his food and toilet. The appellant complained of pain and paresthesias in all extremities. However, the pattern did not correspond to a nerve root pattern. Flare-ups which impacted the function of the lumbar spine were denied.

The appellant was afforded a peripheral nerves examination in August 2013. The claims file was reviewed. The appellant did not have a peripheral nerve condition or peripheral neuropathy. The examiner noted that the appellant had been diagnosed with left lower extremity radiculopathy; however, such was not a peripheral nerve condition. Pain was present in all extremities, and was mild, intermittent, and usually dull. Muscle strength and reflexes were all normal. There was no atrophy and there were no trophic changes. Gait was normal. All lower extremity nerves were normal. No assistive devices were used. The examiner opined that the appellant experienced mild left side radiculopathy.

The appellant was afforded a peripheral nerves examination in September 2013. The claims file was reviewed. The appellant complained of numbness and tingling which travels down the inner aspect of his left leg down to the top of his left toe. The appellant experienced moderate constant pain, moderate paresthesias and/or dysesthesias, and moderate numbness in the left lower extremity. Muscle strength was normal and there was no atrophy. Reflexes were 1+ bilaterally, indicating hypoactivity. Sensation testing for light touch was normal. There were no trophic changes. An Electromyogram (EMG)/Nerve Conduction Study (NCG) was conducted. Such revealed no evidence of lumbar radiculopathy, but symptoms suggestive of chronic mixed sensory polyneuropathy, most likely due to poorly-controlled diabetes. Straight leg raise test was negative bilaterally. Hip examination was normal bilaterally. Facet loading of the lumbar spine was negative. There was no impact on his ability to work.

An April 2014 clinical note states that gait was normal with no assistive device. Examination of the extremities revealed that there was no peripheral edema or cyanosis. Deep pulse was nonpalpable bilaterally. Sensation was intact to light touch, pin prick, and proprioception bilaterally. Toenails were hypertrophic. It was noted that nonpalpable pulse in the bilateral feet was an abnormal finding; however, foot sensory exam using monofilament was normal.

In a statement received in June 2015, the appellant reported flare-ups of the lumbar spine which occurred weekly. He rated the pain as an 8 to 9. He stated that he experiences swelling and warmth in joints during weather changes. He also experiences tenderness, intermittent, and aching pain when his spine is pressed or he performs motion. He noted pinching, tingling, and numbness in his spine as well. If he stands for long periods, he experiences aggravations of pain in his upper and lower back, along with muscle spasms.

The appellant was afforded a VA examination for his lumbar spine in July 2015. Muscle strength and reflexes of the bilateral extremities were normal. Flare-ups of the back were denied. Sensory examination was also normal bilaterally. Straight leg raise was negative. The appellant did not have radicular pain or any other signs or symptoms due to radiculopathy. He made occasional use of a brace and cane. It was noted that the appellant had been put on light duty as he was working as a police officer and could no longer run or get into physical contact. The appellant's left hip was also examined. He reported experiencing pain on the lateral side of the hip which traveled down the leg to the outside of the foot. He also experienced tingling. Flare-ups of hip symptomatology were denied. Muscle strength was normal and there was no atrophy. The examiner noted that the appellant's left hip pain was sciatic pain from the back. Rather, the location of pain in the buttock going down the leg was not typical of hip pain. The examiner attributed such pain to his service-connected left lower extremity disability. With respect to the appellant's June 2015 reports of flare-ups, the examiner stated that it was characteristic of joint conditions to have exacerbations and remissions.

In a statement received in November 2015, the appellant's wife reported that the appellant has experienced pain in the back and left leg and has been unable to sleep as a result of such. He needs help getting out of bed.

The appellant was afforded an examination in February 2016. The appellant reported radiating pain in the left lower extremity "all the time." Muscle strength testing of the left side was 3/5 for hip flexion, 4/5 for knee extension, ankle dorsiflexion, and ankle plantar flexion, and 5/5 for great toe extension. There was no atrophy. Left knee and ankle reflexes were 1+, revealing hypoactivity. Sensory examination was normal bilaterally. Straight leg raise was normal bilaterally. The appellant experienced moderate constant pain, severe intermittent pain, moderate paresthesias and/or dysesthesias, and mild numbness of the bilateral lower extremities. The L4/L5/S1/S2/S3 nerve root was involved bilaterally. The examiner stated that the appellant's radiculopathy was moderate bilaterally. He made constant use of back and left knee braces for pain and stability, and constant use of a cane. The functional impact was difficulty with prolonged standing, sitting, weight-bearing, and lifting. The examiner opined that the appellant experienced moderate left radiculopathy.

A July 2016 clinical note states that examination of the lower extremities revealed no edema, range of motion within normal limits, decreased muscle strength bilaterally of 4/5, muscle tone within normal limits, and pedal pulse. He was noted to experience chronic back and hip pain/sciatica.

An August 2016 physical therapy note states that bilateral lower extremity strength was 4/5. Light touch sensation was intact bilaterally, except right L3 dermatome had decreased sensation. He was noted to demonstrate bilateral lower extremity weakness.

The appellant was afforded an examination for his lumbar spine in October 2016. The claims file was reviewed. He was diagnosed with bilateral lower extremity sciatic radiculopathy. Reflexes were normal bilaterally. Straight leg raising test was negative bilaterally. The appellant did not experience constant or intermittent pain, or numbness, in either lower extremity. He experienced mild paresthesias and/or dysesthesias bilaterally. The L4/L5/S1/S2/S3 nerve roots were involved bilaterally. The right side radiculopathy was mild, while the left was not affected. The functional impact was difficulty running, squatting, bending, and walking for long.

An October 2016 clinical note states that straight leg raise on the left side was limited; however, there were no neurological deficits.

An April 2017 emergency room note states that the appellant strained his lower back approximately one week prior and presented with tingling and shooting pains down the left posterior thigh. Weakness was denied. He described his pain as sharp, constant, and beginning in the lumbar spine area with radiation down the posterior legs. He rated the pain as 8/10. Progressive focal neurologic deficit was denied in all extremities.

The appellant was afforded a VA examination for his peripheral nerves in August 2017. The claims file was reviewed. He was diagnosed with left sciatica and diabetic polyneuropathy. The appellant endorsed pain from the neck to lower back to left leg. He also noted pain in the right leg. In the left leg, the pain was located from the left buttock all the way down to the foot on the outside. Such was constant and did not go away. Flare-ups occur daily when he stands for 20 to 25 minutes. Typically, they occur after the appellant stands for 20 to 25 minutes; and such abate 20 to 25 minutes later. The appellant reported that these flare-ups occur several times daily. Pain interferes with his sleep. He cannot lay on his back so he sleeps on his side. He experienced a flare that morning while showering. Such abated after 20 to 25 minutes. Symptoms attributable to a peripheral nerve condition included mild intermittent pain. Muscle strength was 5/5 bilaterally. There was no atrophy. Reflexes were normal bilaterally. Sensation testing for light touch was normal bilaterally. There were no trophic changes. Gait was normal. The right and left sciatic nerves were affected. No assistive devices were used. September 2013 EMG studies were noted to be abnormal bilaterally. The examiner noted that such indicated that there was no evidence of lumbar radiculopathy. The findings were rather suggestive of chronic mixed sensory polyneuropathy, most likely due to poorly-controlled diabetes. There was no impact on his ability to work. The examiner stated that examination revealed symptoms of sciatica with no positive signs. He had pain going down the left leg to the lateral side of the foot, which indicated sciatica. There was no weakness, sensory loss, reflex change, or positive straight leg raise. Thus, he did not have radiculopathy. The appellant was noted to have experienced a flare-up earlier in the day prior to examination. The examiner considered the appellant's competent reports of flare-ups which occur after standing for 20-25 minutes and last 20-25 minutes to be "exacerbations of pain." 

Straight leg raise was negative in February 2018. A second February 2018 clinical note states that the appellant complained of tingling in the bilateral lower extremities, present for at least five months. 

Analysis

As set forth above, the clinical evidence contains some ambiguity as to whether the appellant's lower extremity symptoms are due to his service-connected low back disability. Where it is not possible to distinguish the symptoms of a service-connected disability from non-service connected manifestations, all the manifestations will be considered part of the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998). Affording the appellant the benefit of the doubt, the Board will consider all neurologic symptomatology of the left lower extremity as attributable to his service-connected left lower extremity radiculopathy, regardless of how it has been characterized by the clinicians. Upon weighing the evidence, the Board finds that the preponderance of the evidence is against an initial rating in excess of 10 percent prior to February 16, 2016, and against a rating in excess of 20 percent thereafter.

The Board wishes to make it clear that it is aware of the Court's instructions in Fletcher v. Derwinski, 1 Vet. App. 394, 397 (1991), to the effect that a remand by the Court is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1). A remand is meant to entail a critical examination of the justification for the decision." The Board's analysis has been undertaken with Fletcher in mind.

Prior to February 16, 2016, the appellant's left lower extremity radiculopathy has been manifested by no more than sensory deficit, radiating pain, and occasional numbness. Muscle strength and reflexes were consistently observed to be normal during this period. Straight leg raise test was primarily negative, although such was positive in April 2011. In August 2013, pain was mild, intermittent, and usually dull. The examiner opined that the appellant experienced mild radiculopathy.

No examiner described the appellant's overall symptomatology as greater than mild during such period. 

The Board observes that use of terminology such as "severe" by VA examiners and others may be considered, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6. 

Although the September 2013 VA examiner described the appellant's pain, paresthesias and/or dysesthesias, and numbness in the left lower extremity as moderate, the examiner also noted that sensation for light touch was normal and other objective findings included normal muscle strength without atrophy and no trophic changes. Moreover, the examiner indicated that the appellant's disability had no impact on his ability to work. Thus, although the examiner described the severity of some symptoms as moderate, the Board finds that the appellant's overall symptomatology prior to February 16, 2016, approximates mild incomplete paralysis. 

The Board observes that the appellant made regular use of a cane prior to February 16, 2016, see August 2013 VA examination report, and occasional use of a brace and cane, see July 2015 VA examination report. Further, while reflexes were hypoactive during a September 2013 examination, such were normal otherwise. See January 2008, March 2010, August 2013, and July 2015 examination reports. Further, muscle strength was normal prior to February 16, 2016. The use of a cane and the observation of hypoactive reflexes do not more nearly approximate moderate incomplete paralysis prior to February 16, 2016.

Since February 16, 2016, the preponderance of the evidence is against the appellant's overall symptomatology being greater than moderate in severity.

No examiner has described the appellant's overall symptomatology as greater than moderate during this period. While the evidence indicates that the appellant's symptomatology was more than just sensory, such does not more nearly approximate moderately severe symptomatology at any point. He made constant use of a cane and back and left knee braces. Reflexes were hypoactive during the February 2016 examination, but were observed to be normal in October 2016 and August 2017. Muscle strength was observed to be decreased in February, July, and August 2016; however, such was 5/5 in August 2017. The February 2016 and August 2017 examiners both found that there was no muscle atrophy.

The Board finds that his overall symptomatology since February 16, 2016, including pain and numbness, more nearly approximates moderate incomplete paralysis. Thus, a rating in excess of 20 percent is not warranted for any portion of the period on appeal since February 16, 2016.

As the evidence preponderates against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Flare-Ups

Per the Court's July 2016 Memorandum Decision, the Board has considered whether an increased rating is warranted for any portion of the appeal as a result of his flare-ups of left lower extremity radiculopathy symptomatology. However, the appellant has not experienced symptomatology which is more than sensory, even during flare-ups. Id.

Prior to February 16, 2016, the appellant's flare-ups do not warrant an initial rating in excess of 10 percent. In June 2015, he described flare-ups as occurring weekly, characterized by increased pain, swelling, warmth, tenderness, pinching, tingling, and numbness. It is unclear from his statement which symptoms are experienced in the left lower extremity, as opposed to simply the lumbar spine; however, affording him the benefit of the doubt, the Board finds that all of these reported symptoms were experienced with respect to the left lower extremity. However, such do not warrant an initial rating in excess of 10 percent for any portion of the period prior to February 16, 2016. 

Since February 16, 2016, the appellant's flare-ups of the left lower extremity do not warrant a rating in excess of 20 percent. During his August 2017 examination, the appellant described his flare-ups as occurring several times daily and being characterized by more severe pain for 20 to 25 minutes at a time, following prolonged standing.

Flare-ups must be quantifiable and must result in limitation of function beyond that contemplated by the already provided evaluation. In addition, because there is a regulation addressing stabilization of ratings, the flare-up must be of such length as to establish that the overall impairment is more severe than currently evaluated, rather than a brief snapshot in time. Here, the appellant's statements, even accepted as credible, would not warrant a higher evaluation based upon flare-ups since such flare-ups do not additionally limit function in a quantifiable way and are not of such length or duration that a staged rating would not violate the rule regarding stabilization of ratings. 

Prior to February 16, 2016, flare-ups occurred no more than weekly. Since February 16, 2016, although flare-ups occurred several times daily, the involvement was still no more than sensory. Thus, such flare-ups do not more nearly approximate moderately severe incomplete paralysis. See 38 C.F.R. § 4.124a, Diagnostic Codes 8510 - 8730 (when the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree).
 
In sum, 38 C.F.R. § 4.1 provides that the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illness proportionate to the severity of the several grades of disability. Here, the reports of exacerbation or flare-ups are not quantifiable and not of sufficient duration to warrant a change in evaluation without violating the spirit of Mitchell v. Shinseki, 25 Vet. App. 32, 37-43 (2012), the spirit of 38 C.F.R. § 4.1, and the rule regarding stabilization of ratings. 

Again, the Board emphasizes that it has considered all neurologic symptomatology of the left lower extremity as attributable to his service-connected left lower extremity radiculopathy.

TDIU

The Board has considered a total rating based on individual unemployability due to service-connected disability (TDIU), pursuant to Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). However, absent any indication or allegation that the appellant is unemployable as a result of his service-connected left lower extremity radiculopathy, consideration of a TDIU is not warranted. Thus, the record does not reasonably raise the issue of TDIU. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009).

As the evidence preponderates against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Restoration of the 20 percent disability rating for left lower extremity radiculopathy, effective June 1, 2018, is granted, subject to the law and regulations governing the payment of monetary benefits.

Entitlement to an initial rating in excess of 10 percent for left lower extremity radiculopathy, prior to February 16, 2016, and a rating in excess of 20 percent thereafter, is denied.



REMAND

Diabetes Mellitus and Hypertension

An April 2013 provisional rating decision denied service connection for diabetes mellitus type II, claimed as sugar diabetes, and essential hypertension, claimed as high blood pressure. The appellant and his representative attempted to file an NOD in June 2013, but were informed via July 2014 correspondence that the request to appeal the decision could not be accepted as the rating decision was provisional in nature. The VA letter explained that the provisional rating decision became final on April 30, 2014, and that the decision could now be appealed, until April 30, 2015. In October 2014 and November 2014 correspondence, the appellant's attorney requested that "a decision to finalize" the April 2013 rating decision be made in order to allow them to appeal such decision.

The Board observes that a July 2015 rating decision confirmed and continued the previous denials of service connection for diabetes mellitus type II, claimed as sugar diabetes, and essential hypertension, claimed as high blood pressure. An expression of disagreement with such July 2015 rating decision was received in November 2015. 

However, the April 2015 Board remand found that the attorney's October 2014 correspondence was "essentially" an NOD with respect to the then-final April 2013 rating decision, for which the appellant and his attorney had been informed that they had from April 2014 to April 2015 to appeal. The Board remanded the issues of entitlement to service connection for diabetes mellitus type II, claimed as sugar diabetes, and essential hypertension, claimed as high blood pressure, for the issuance of an SOC. See Manlincon v. West, 12 Vet. App. 238 (1999). However, such an SOC has not been issued. Compliance with remand directives by the originating agency is not optional or discretionary. The Board errs as a matter of law when it fails to ensure remand compliance. See Stegall v. West, 11 Vet. App. 268 (1998). Thus, the issues must again be remanded for compliance with the Board's remand directives.

Kidney Disease

VA treatment records indicate that the possible causes of the appellant's currently-diagnosed renal insufficiency are diabetes mellitus or hypertension. As resolution of the claims of service connection for diabetes mellitus type II, claimed as sugar diabetes, and essential hypertension, claimed as high blood pressure, may have an impact on the appellant's claim of entitlement to kidney disease, the issues are inextricably intertwined. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that where a decision on one issue would have a "significant impact" upon another, and that impact in turn could render any appellate review meaningless and a waste of judicial resources, the two claims are inextricably intertwined).

Left Hip and Lumbar Spine

The Board remanded the issues of entitlement to service connection for a left hip disability and entitlement to a rating in excess of 20 percent for a lumbar spine disability in April 2015. The appellant was to be afforded an examination for his left hip in order to obtain an etiological opinion. He was also to be afforded the opportunity to clarify the flare-ups he reported experiencing with respect to his service-connected lumbar spine disability. 

The AOJ substantially complied with such directives, by conducting a July 2015 examination and obtaining an etiological opinion with respect to the left hip and by sending the appellant a letter in May 2015 requesting additional information regarding his lumbar spine flare-ups. The appellant and his representative have not contended otherwise. Stegall v. West, 11 Vet. App. 268 (1998).

However, no Supplemental Statement of the Case has been issued with respect to either issue. Further, the appellant's response to the May 2015 letter regarding flare-ups was received in June 2015; and he was afforded examinations of his lumbar spine in July 2015, April 2016, and October 2016.

When pertinent evidence is submitted by an appellant or representative and is received by the Board pursuant to 38 C.F.R. § 19.37(b), the claim must be remanded to the AOJ for review, unless this right is waived or the benefit may be fully allowed. 38 U.S.C. § 7105(e) provides that waiver of initial AOJ review of evidence submitted by the claimant or his representative to the AOJ or the Board is presumed in cases where the substantive appeal was filed after February 2, 2013. See 38 U.S.C. § 7105(e); VA Fast Letter 14-02 (May 2, 2014). The Board notes that the substantive appeal was filed prior to February 2, 2013, and that the examination reports were not submitted but rather were created by VA. In these circumstances, a remand is warranted for initial AOJ review of this evidence and, if the claims remain denied, issuance of a SSOC to the appellant and his attorney.

Accordingly, the case is REMANDED for the following action:

1. Issue an appropriate Statement of the Case addressing the issues of service connection for diabetes mellitus and hypertension. 

The appellant and his representative should be advised of the time afforded for perfecting an appeal in this matter, and given opportunity to do so. If that occurs, these matters should also be returned to the Board for appellate review.

2. After reviewing the evidence of record, the RO should issue a Supplemental Statement of the Case addressing the issues of entitlement to service connection for a left hip disability and entitlement to an increased rating for a lumbar spine disability. After the appropriate opportunity to respond, the appeal must be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).





______________________________________________
K. Conner
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs